## M. T. HENDRICKS v. E. HUFFMEYER ET AL.

### Delivered December 16, 1896.

**1. Practice on Appeal—Motion to Suppress—Record—Presumption.**

Error will not be presumed where the record shows merely that a motion to suppress a cross-interrogatory and its answer was overruled without disclosing the substance of the motion, or when it was made, or the reason of the court for overruling it.

**2. Parol Evidence—Existence and Loss of Judgments.**

Evidence by parol is admissible to show that certain decrees of court in partition were made, and were subsequently lost or destroyed (such evidence purporting to show the contents of the decrees); and the fact that what purports to be a full transcript of the record in such partition proceedings is in evidence in the case, goes only to the credibility, not the admissibility, of such parol evidence.

**3. Depositions—Objection Required to be by Written Motion.**

That a cross-interrogatory asks for and seeks to prove a fact which the witness, in his answer thereto, says never occurred, is an objection that goes to the manner and form of taking the deposition, and must be made by motion in writing.

**4. Evidence—Record Admissible to Aid Description.**

Where, in trespass to try title, an order of sale in partition is not admissible to show title, it may yet be admitted to show, in connection with other evidence, what lands were intended to be described in a prior decree of partition of the same land.

**5. Same—Discrediting Evidence Immaterial.**

Where evidence of a statement made by a party is excluded, the exclusion of other evidence discrediting such statement could not have been error.

**6. Limitation—Charges not in Conflict.**

Where the court had instructed the jury positively that the defendants had not acquired title by limitations, a further instruction that, "if the statute of limitations ever began to run" against one of the plaintiffs, "her marriage did not suspend the statute," is not error, where the evidence shows that the statute did so begin to run, but that its bar was not completed before suit filed.

**7. Tax Title—Purchase of by Owner—Effect.**

The mere purchase of a tax title to land by one already claiming an interest in the land does not have the effect of impairing or showing an abandonment of such previous right or interest.

APPEAL from Bandera. Tried below before Hon. EUGENE ARCHER.

*Storey & Storey* and *H. C. Duffy*, for appellant.

*John A. Green, Jr.*, for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellant in the ordinary form of trespass to try title to recover of appellees two surveys of land, Nos. 69 and 70, patented to the heirs of Catherine Arnold, deceased. The appellees, defendants below, pleaded in abatement that administration on the estate of Hendrick Arnold, under whom appellant claims by inheritance, is pending in the Probate Court of Bexar County, and has not been closed; not guilty; the statute of limitations of five and ten years; improvements in good faith; and disclaimer as to all the land, except as to the parts claimed by them, respectively. The case was tried before a jury, and verdict and judgment rendered for the defendants, from which the plaintiff has appealed; it being the second appeal from a judgment against him. Our opinion on the first is reported in 27 S. W. Rep., 777.

*Conclusions of Fact.*—The land in controversy was originally located by Daniel Arnold, administrator of Catherine Arnold, in May, 1841; Catherine having died prior to that date. Daniel Arnold, so far as the record shows, was the only son and heir of Catherine. He rendered his property for taxes to the assessor and collector of taxes for Bexar County, in which county the property involved in this suit was then situated, in 1848, and such rendition did not include the property sued for. Daniel died on October 14, 1848, leaving seven children, one of whom died unmarried. The other six—Hendrick, Holly, Benjamin, Cassie, Celnie, and Katie—inherited his estate, subject to administration. At the October term, 1848, of the County Court of Medina County, Hendrick Arnold was appointed administrator of the estate of Daniel Arnold,

deceased.   In November, 1848, he filed in said court an inventory and appraisement of the estate of Daniel, which contained the following as a part of the estate of the deceased, viz: "The eighth part of one league and labor in Medina, $300."   By mutual agreement of the heirs of Daniel Arnold, his estate was partitioned among them, and the partition approved by the court on the 25th day of February, 1850.   On the 12th day of December, 1848, the estate of Daniel Arnold was partitioned, by mutual agreement, among the heirs, and in the partition the following items appear, viz:   (a) "The heirs of Catherine Arnold, wife of Clement Rainey, apportioned one-half of the eighth part of a league and labor of land situated on the east side of the Medina river, about 25 miles from the town of Castroville; appraised $150."   (b) "The heirs of Benjamin F. Arnold apportioned one-half of the eighth part of a league and labor of land, situated on the east side of the Medina river, about 25 miles above the town of Castroville; appraised $150."   (Note.   "Catherine Arnold," referred to in the partition, is "Katie," daughter of Daniel Arnold; for "she married Mr. Rainey.")   Hendrick Arnold died on the 9th day of November, 1849, and it seems, after his death, that Holly Arnold was appointed administrator de bonis non of Daniel Arnold's estate; for the record shows that, as such administrator, he was ordered by the County Court to convey title to the respective heirs to certain property allotted to them in the partition of the estate, and that his final account was approved, and he was discharged as such administrator in February, 1850.

Hendrick Arnold left, as his heirs at law, six children, three of whom died in infancy.   The names of the other three are Mary A., Martha A., and Juanita.   Mary married John Brothers in 1848, who died prior to June 30, 1851, and she married W. C. Adams on May 7, 1861, and is now living.   Martha A. married Charles McDonald in 1861, and died July 5, 1862, leaving an only child, Guadalupie L. McDonald, who was born on the 24th of June, 1862, surviving as her only heir.   Guadalupie's father died in 1863, leaving no other children.   On the 11th day of August, 1886, she married appellant, M. T. Hendricks, and on May 7, 1888, she died, without child or children, leaving her husband her only heir, who inherited from her whatever interest she was entitled to at the time of her death in the land involved in this suit.   No administration was had on her estate.   It is upon such heirship he relies for a recovery.   Juanita, daughter of Hendrick Arnold, married William Hudson, who died in 1890, in Brackett, Texas, his wife surviving him.

Having traced, as well as we can from the record, down to the present time, the heirs of Hendrick Arnold, we will, in the same way, endeavor to trace out the heirs of the other children of Daniel Arnold. Holly died in 1884.   As will be shown, he sold the land in controversy long prior to his death.   It is unnecessary to inquire who are his heirs. Benjamin died in 1847, leaving, surviving him, two children, named Daniel and Elizabeth, to whom, as is before shown, one-half of the eighth part of a league and labor of land situated on the east side of the Medina

river, about 25 miles above Castroville, was allotted in the distribution of Daniel Arnold's estate.   As the guardian of these parties, who were minors, Holly Arnold, on the 25th of August, 1851, obtained an order from the County Court of Medina County to sell property of his wards described as above, with the additional description that it is known as "Surveys Nos. 69 and 70."   Katie married one Clopton, and bore him two children, Benjamin and Richard, and then married one Rainey, by whom she had two children, named Luiza and Rachel.   It was to Katie's heirs that one-half of the eighth part of a league and labor of land situated, etc., was partioned in the distribution of Daniel Arnold's estate.   Cassie married Walter Southerland, and bore him a son, Milton, and a daughter, Minerva, and then married W. V. Patterson, by whom she had twin sons, Felander and Leander, besides two other sons, Lafayette and Donald, all of whom are dead, except Donald.   Ceenie married Alexander Thompson, and bore him one son, named Hendrick Thompson, of whose estate Holly Arnold was guardian.   The record shows that Holly, as such guardian, filed an account in the County Court of Medina County on March 30, 1850, in favor of his ward, against the estate of Hendrick Arnold, for the value of said minor's interest in the estate of Daniel Arnold, and that the account was presented to, and accepted and paid by, John Brothers, administrator of the estate of Hendrick Arnold, on the 29th day of October, 1850.

John Brothers was appointed by the County Court of Bexar County, and qualified, as the administrator of Hendrick Arnold, on the 28th day of January, 1850.   Brothers having died, Martina Arnold, the wife of Hendrick, was appointed his administratrix de bonis non by the County Court of Bexar on the 5th day of July, 1851.   The record discloses no inventory of the estate filed by Brothers, but it shows one filed February 23, 1852, by Martina Arnold, administratrix.   In this inventory the land in controversy is not mentioned.   Nor is there anything to show that any part of the land was dealt with or considered in the administration as assets of the estate.

A certificate from the Comptroller of the State contains a statement of the taxes from the rolls in his office, and shows that (1) in 1847 the land was rendered for taxes in Bexar County as the property of Catherine Arnold, by H. Arnold, administrator; (2) in 1848 it was not assessed; (3) in 1849 it was rendered in Bexar County as the property of H. Arnold; (4) in 1850 it was rendered in Bexar County by John Berthan as the property of H. Arnold; (5) in 1851 it was rendered in Medina County as the property of Holly Arnold; (6) in 1852 it was rendered in Medina County as the property of Holly Arnold, and in the same year it was rendered in the Comptroller's office by Charles Coney as the property of C. Monod; and (7) in 1853 it was rendered in Travis County by S. M. Swinson as the property of C. Monod.   In 1848 Daniel Arnold rendered his property for taxes in Bexar County, but his rendition did not embrace any of the land in controversy.

On the 20th day of December, 1851, C. D. Lytle, assessor and col-

lector of taxes for Bexar County, executed tax deeds to John James for the property involved in this suit, which deeds contain the following recitals, viz: "Whereas, by assessments made in conformity with law, there was due and owing the State of Texas and county of Bexar, from John Brothers, adm'r Hendrick Arnold, dec'd, the sum of one dollar and twenty-nine cents, assessed as the State and county tax for the year 1850 upon the property of said John Brothers, as administrator aforesaid; and whereas, the said John Brothers, as adm'r aforesaid, has failed and refused to pay the same as required by law." Then follow recitals of the levy, sale, description of premises, etc. The granting clause is as follows: "And do hereby grant, alienate, and convey unto the said John James, his heirs and assigns, all the right, title, interest of the said John Brothers as adm'r aforesaid, and of every other claimant whomsoever in and to said land."

On the 22nd day of June, 1852, John James executed two instruments to Holly Arnold. A copy of one is as follows: "The State of Texas, county of Bexar. For value received, I do hereby assign and set over to Holly Arnold all the right, title, and interest which I acquired to 2302 acres of land, known as 'Survey No. 69, Sec. 5,' by virtue of the within tax title, executed to me 20th December, 1851, by Charles D. Lytle, assessor and collector, together with all and singular the rights, privileges and appurtenances acquired by and under said tax deed, and no more." Then follows the date of instrument, signatures of grantor, and subscribing witnesses. The other instrument is like this one, except it is for survey No. 70, section 5. Both instruments were recorded in office of the county clerk of Bexar County on the 1st of March, 1853, and afterwards transcribed in the records of deeds of Bandera County. The tax deeds to Mr. James, and his assignments of them to Holly Arnold, were introduced in evidence, in connection with the deeds under which the defendants claim, by the plaintiff, for the purpose of showing Hendrick Arnold the common source of title. On February 12, 1853, Holly Arnold conveyed, by his warranty deed of that date, all the property in controversy to C. Munod, which deed was filed for record in Bandera County on the 28th of February of that year. On the 9th day of March, 1869, C. Munod, by his warranty deed of that date, conveyed both surveys to Eugene Oborski, who, on the 23d day of June, 1869, conveyed 850 acres of it to his wife, Dora. These deeds were recorded, respectively, in the office of the County Clerk of Bandera County on the 15th of March and 13th of July, 1869. All the other defendants hold under regular and consecutive chains of title from E. Oborski or his wife.

The land has been in the continuous actual possession of defendants from the dates of their respective deeds, beginning with E. Oborski in 1869. The defendants, and those under whom they claim, have paid all taxes on the land from the date of their respective deeds. Upon the trial they exhibited the original patents to the land, and proved that Oborski received them from Munod when he bought the property from

him, and they had been in their possession ever since. The land has been generally known as and called "Monod Valley," ever since it was occupied, taking its name from Caesar Monod, who bought it from Holly Arnold. Holly Arnold, Mrs. Adams, Mrs. McDonald (mother of plaintiff's deceased wife), and Cassie Patterson - lived together in Castroville, in 1863, more than 10 years after Holly Arnold sold the land, and none of them asserted any claim to it. Mrs. Guadalupie Hendricks and Mrs. Adams lived in Bandera County about three years, and never asserted any claim to the land, although they knew it was occupied and claimed by defendants, or those under whom they hold. A witness, who was the agent of Mrs. Adams and Miss Guadalupie McDonald for several years before the latter married, and who, under their directions, rendered their property for taxation, and paid taxes for them, —they furnishing the money,—testified that, in the list of their lands in Bandera County, furnished him, there was no mention of the land in controversy. The first and only claim asserted to the land through Hendrick Arnold since his death is the claim asserted by the plaintiff after the death of his wife.

From the facts and circumstances above found we conclude (1) that Hendrick Arnold is not the common source of title through whom plaintiff and defendants claim; (2) that Hendrick Arnold owned no part of the premises at any time after his father's death; and (3) that the wife of plaintiff never owned any of the land, and consequently plaintiff never inherited any from her.

*Conclusions of Law.*—1. The first assignment of error complains of the court's overruling appellant's motion to suppress the eighth cross-interrogatory propounded by appellees to Mary A. Adams, and her answer thereto. It does not appear, from the statements made in appellant's brief, after the proposition under this assignment, when the motion to suppress was made, or the grounds upon which it was based. A reference to the transcript shows a bill of exceptions in which it is simply stated the court erred in overruling the motion, without stating its substance, or the reason of the court for overruling it. Upon such a record everything will be indulged in favor of the court's ruling. It may be that the motion to suppress was not filed within the required time, or, if it was, it stated no such grounds as required the court to grant it.

2. After the motion was overruled, it seems that the following objections were made, and overruled, to the reading of the interrogatory and answer in evidence to the jury, viz: "(1) It sought to show by parol what the Probate Court of Medina County did in the estate of Daniel Arnold, deceased; (2) the record of said court is the best evidence, and a full transcript of its proceedings was on file in the cause and exhibited to the court; (3) the answer of the witness is in the alternative, and is not a sufficient affidavit of the loss or destruction of the decrees to predicate the statement that there were two administrations and partitions of

the estate upon; and (4) the cross-interrogatory asked for and sought to prove a verbal partition which the witness says never took place." In order that the force of these objections may be understood, we will insert the interrogatory and the part of the answer, and they are as follows: Cross-interrogatory 8: "Was there not a verbal and agreed partition of the estate of Catherine Arnold and Daniel Arnold, her son, and did not the heirs of said Daniel and Catherine consent to said verbal partition? Was not possession of the separate parts of the estate of Catherine and Daniel Arnold, her son, taken by the various heirs under said agreed verbal parti-. tion?" Answer: "Daniel Arnold inherited all the property of his mother, Catherine Arnold, and her grandchildren succeeded to the heritage of both of them. The Probate Court of Castroville made two partitions of the estate, and there were two different administrators. The decree of partition, and, in fact, all documents in reference to the estate, were destroyed or disappeared. I never heard of there ever having been a verbal agreement of partition, or any partition, except that of those made by the Probate Court." The answer does not purport to show the contents of the decree of partition, but only the facts that two such decrees were made, and that they had been destroyed, or had disappeared. If such were the facts, any one who was acquainted with them could relate them. That such statements were discredited by the records of the proceedings in the estate which were introduced in evidence goes to the weight of the testimony, and not to its admissibility. If the answer tended to show the contents of the decrees or records, we could see some force in the three first objections. As it is, we perceive none which tend to show the appellant was prejudiced by the failure of the court to sustain them. The fourth objection goes to the manner and form of taking the deposition, and should have been by motion in writing. Lee v. Stowe, 57 Texas, 449; Brown v. Mitchell, 75 Texas, 15; Railway v. Kuehn (Texas Civ. App.), 21 S. W. Rep., 58.

3. The admission of the orders of sale obtained by Holly Arnold as guardian of the estate of the heirs of Benjamin Arnold referred to in our conclusions of fact, was objected to by appellant, upon the grounds that he was not a party to such proceeding, and that it was irrelevant to any issue in the case. The objections were overruled, and the admission of the order in evidence assigned as error. The following part of the court's charge shows the purpose of appellees in introducing such testimony, and, in our opinion, its relevancy: "You are instructed that the court has admitted in evidence before you an order of sale from the probate court of Medina County, of date August 25, 1851, in 'Estate No. 16, Estate of Daniel and Elizabeth Arnold, Minor Heirs of Benjamin Arnold, Deceased,' and an order of sale in the same estate, of date 29th day of September, 1851, both of which order the sale of certain property described. I charge you that such instruments have been admitted, not for the purpose of showing title to any person to the land therein set out, but the same may be considered by you, in connection with all the evidence in the case, in arriving at a conclusion as to what

land was intended to be described in the inventory and partition of the estate of Daniel Arnold, deceased, but said orders of sale must not be considered by you for any other purpose." The appellees sought to show that only one-eighth of the land in controversy was claimed by the administrator, Hendrick Arnold, as assets of the estate of Daniel Arnold. The inventory of his estate disclosed that quantity, but the description did not fully identify it. Whatever land it was passed in the partition of the estate to the heirs of Benjamin. When it was ordered sold by their guardian, who had also been the administrator of Daniel's estate, the land was described in the exact words of the decree of partition in Daniel Arnold's estate, with the additional words, "And known as 'Surveys Nos. 69 and 70, in Sec. No. 5,'" which identifies the land allotted to said heirs in the partition as part of the premises involved in this suit. McBee v. Johnson, 45 Texas, 642-644; Davis v. Touchstone, Id., 496.

4. It does not seem that the testimony, the exclusion of which is complained of in appellant's fourth assignment of error, was pertinent to any issue in the case. If we understand the purpose for which it was offered, it was to discredit a statement that Holly Arnold had made to Charles Montague, which appellees offered in evidence, but which was excluded upon objection of appellant. After such statement was excluded, it could not be discredited. If Holly Arnold's declaration had been admitted, the appellant might have introduced the testimony as a circumstance to show such declaration was untrue; but, as it was excluded, it is immaterial, so far as this case is concerned, whether it was true or false. Besides, in the absence of such declaration, the testimony excluded would not affect the statement made by appellant's wife to Montague after he had repeated Arnold's declaration to her.

5. The court gave, at the instance of appellees' counsel, the following special charge, viz: "That if they believe, from the evidence, that the estate of Daniel Arnold, son of Catherine Arnold, only owned one-eighth of the league and labor of land in controversy, and that said one-eighth was partitioned, in the division of said Daniel Arnold's estate, to the wife of Clement Rainey, and to the heirs of Benjamin Arnold; and if you believe, from the evidence, that the plaintiff has not acquired any of the interest of the said Clement Rainey, or the said heirs of Benjamin F. Arnold; and if you further believe, from the evidence, that the plaintiff and defendants do not claim from the tax title, introduced as a common source,—then you will find for defendants." It is complained of as error. When it is taken and construed in connection with the entire charge of the court, we believe it was eminently proper, as is demonstrated by the following proposition, taken from appellees' brief: "It was not error to give the defendants' special charge No. 7, because the plaintiff claimed either by right of Daniel Arnold or by his own right. (a) His right through Daniel Arnold was by inheritance; but the estate of a decedent passes to the heirs, subject to administration. If, therefore, the administration proceedings show the

truth, and that Daniel Arnold only had one-eighth of the property at his death, and this one-eighth passed to the wife of Clement Rainey and the minor heirs of Benjamin Arnold, and the plaintiff has no title to 'any of the interest [not the whole of it] of the said Clement Rainey or the said heirs of Benjamin Arnold,' then the plaintiff certainly cannot recover anything by virtue of the title of Daniel Arnold. (b) As to his recovery in his own right, this was shown only by the tax title to John James. This tax deed is the only paper in the record that shows that Hendrick Arnold ever had a shadow of a claim to the land. The plaintiff claims that this tax deed to John James shows that Hendrick had title to the land once. He derives his title, in one view of the case, from what the tax deed says; hence through the tax title. He says, too, that the defendants also claim through the tax title by reason of Holly Arnold's having purchased John James' rights under the tax title, and, therefore, that the plaintiff and defendants claim from Hendrick Arnold as a common source through the tax title. The defendants deny that, under all the facts, they claim from this common source. If, therefore, upon a submission of this, the second and only other claim of plaintiff, to the jury, they find a verdict for the defendants, then the verdict is right, and the plaintiff cannot complain, since the charge clearly submitted all his claim to the jury. The jury could not possibly have been misled."

6.   After the court had instructed the jury "that the undisputed facts show that Guadalupie L. Hendricks, wife of plaintiff, was a minor on the 24th day June, 1883, and that she died on the 7th of May, 1888, less than five years after she became of age; that she left no will disposing of her property, nor was administration taken out on her estate. The statute of limitation, therefore ceased to run against her heir at her death for twelve months, and before the twelve months expired this suit was brought. The defendants, therefore, have not acquired title to the land sued for by either five or ten years' limitation, as against the right of plaintiff, M. T. Hendricks, to recover whatever portion or interest in the land sued for to which his wife was entitled at her death,"—at the request of appellees he charged the jury "that, if the statute of limitation had ever begun to run against Guadalupie McDonald before her marriage to M. T. Hendricks, her subsequent marriage did not suspend the statute of limitations." The giving of this special charge is assigned as error, "because (1) the court had already given a full and complete charge upon that point, giving the undisputed facts upon the issue; (2) the special charge confused the minds of the jury, and led them to believe that the court intended to modify the charge already given on the subject." The special charge complained of is a correct proposition of law, and is applicable to the facts, for appellant's wife, who was born on the 24th day of June, 1862, correctly speaking, became of age on the 23rd day of June, 1883; and, as she did not marry until the 11th day of August, 1886, the statute commenced to run before she married, and continued until her death, when

it was suspended for twelve months. This special charge in no way conflicts with the general charge, and must be construed in connection with it; and, when it is, no injury can possibly result to the appellant from it, as the jury could not, under the charge, find for appellees on the statute of limitations.

7. The court instructed the jury, at the request of appellees, as follows: "That, although you may believe, from the evidence, that Holly Arnold purchased a tax title to the land in controversy, yet I charge you that the mere purchase of said tax title would not have the effect of impairing or showing an abandonment of any previous right said Holly Arnold may have had." This charge is not, as is complained in appellant's seventh assignment of error, upon the weight of evidence. There was evidence strongly tending to show that Holly Arnold claimed and owned an interest in the property in controversy prior to the time the tax title was assigned to him. Indeed, if the evidence shows Hendrick had an interest prior to the tax sale, it shows that Holly had at least an equal interest. He asserted claim to all of it prior to the time of such sale. The court had not charged the effect of the transfer by Mr. James to him of the tax title upon such interest as he may have owned prior to that time. Without assuming he had such interest, the charge leaves it to the jury to determine whether he had such interest, and informs them that the acceptance of the tax title would not show an abandonment or impairment of any prior interest he may have had. This we understand to be the law (Converse v. Ringer, 6 Texas Civ. App., 57); and, as it was applicable to the facts, the court did not err in giving it in charge.

8. The court properly refused to give the special charge, requested by appellant, referred to in his eighth assignment of error. It was, without question, upon the weight of evidence.

9. Our conclusions of fact determine the ninth assignment of error, which complains of the refusal of the court to grant a new trial, against the appellant. There being no error assigned requiring a reversal of the judgment of the District Court, it is affirmed.

*Affirmed.*

Writ of error granted by Supreme Court and judgment affirmed.