## M. T. Hendricks v. E. Huffmeyer et al.

Decided April 12, 1897.

**1. Title—Common Source.**

A void tax deed may be used as evidence that parties claim title under a common source; but the acceptance of a deed purporting to convey the interest of several persons, without specifying their respective interests, is not an admission that either of them owns any definite interest. So a tax deed purporting to convey the interest, not only of A., the party against whom the taxes were assessed, but of every other claimant, can not be construed as an assertion of title by the purchaser through any particular person, nor furnish evidence that those claiming title under him claim any interest therein under A. (P. 579.)

**2. Heirship—Evidence.**

A survey of land was patented to the heirs of C. A. The only evidence to prove that D. A. was sole heir of C. A. was the testimony of the granddaughter of the former that he was the only child of C. A. that she ever knew or heard of: but the administrator of D. A. had inventoried a ·one-eighth interest, only, in the survey as belonging to that estate and such one-eighth interest had been set aside to two of the heirs in the partition of the estate. Held, that the evidence did not conclusively show that D. A. was the sole heir, or that any of the remaining seven-eighths was inherited by his descendants. (Pp. 580, 581.)

**3. Case Approved.**

The rulings of the Court of Civil Appeals in this case, Hendricks v. Huffmeyer, 38 S. W. Rep., 523, approved. (P. 579.)

Error to Court of Civil Appeals, Fourth District, in an appeal from Bandera County.

*Storey & Storey* and *H. C. Duffy,* for plaintiff in error.—Henrick Arnold being the common source of title in this case, it was not necessary to show title in him. Mfg. Co. v. Cole, 8 Texas Civ. App., 194; Railway v. Greenlee, 62 Texas, 343.

When in trespass to try title to land the plaintiff has shown by undisputed testimony that he is entitled 'by inheritance to whatever interest his ancestor had in the land sued for, if any, and that the defendants hold the land under a void tax title, by which it was attempted to convey the lands sued for as the property of plaintiff's said ancestor, plaintiff has thereby made out a prima facie case, and it devolves on the defendant to prove a better right to the land, and it is the duty of the court to so instruct the jury. Evans v. Foster, 79 Texas, 38; Herson v. Flanagan, 52 Texas, 279; Morales v. Fisk, 66 Texas, 195; Curtis v. Wilson, 2 Texas Civ. App., 648; Hilburn v. Harris, 2 Texas Civ. App., 396; Dycus v. Harby, 2 Texas Civ. App., 356; Burns v. Goff, 79 Texas, 236.

*John A. Green, Jr.,* for defendants in error.

GAINES, Chief Justice.—The plaintiffs in error brought this suit to recover a league of land consisting of two surveys of a half league each lying on the Medina River and patented to heirs of Catherine Arnold, deceased. The defendants pleaded not guilty and the statute of limitations of five and ten years.

The following is a brief outline of the facts as developed by the evidence: · Catherine Arnold left a son whom the plaintiff claims to have been her only heir and whose name was Daniel Arnold. Daniel Arnold died in 1848 leaving seven children, one of whom died unmarried, so that his estate devolved ultimately upon the other six, of whom Holly Arnold and Hendrick Arnold were two. Hendrick Arnold died in 1849, leaving six children, but three of them died in infancy. One of the survivors, Martha A. Hendrick, married Charles McDonald in·1861, and died, leaving Guadalupe L. McDonald as her only heir. Guadalupe married M. T. Hendricks and died in 1886, intestate, without issue, leaving her husband surviving her. He was the plaintiff in the trial court and is now the plaintiff in error.

Besides attempting to prove title to an interest in the land by regular descent of heirship from the patentee, the plaintiff also endeavored to show that he and the defendants claimed title under Hendrick Arnold as the common source, and to establish the superior title as emanating from that source. For this purpose he introduced in evidence two tax deeds to John James, for the two half leagues in controversy respectively, in each of which, among other recitals, it was stated that the land described had been assessed for taxes as the property of John Brothers, as the administrator of Hendrick Arnold's estate, and that the taxes had not been paid; and each of which purported to "convey unto the said John James all the right, title and interest of the said John Brothers as administrator aforesaid, and of every other claimant whomsoever, in and to said land." These deeds were dated December 20, 1851. They also exhibited quit-claim deeds from James to Holly Arnold, dated in 1852, to the two half leagues respectively, together with chains of conveyances from Holly Arnold down to the several defendants in the suit.

It also appeared in evidence that upon the death of Daniel Arnold, the father of Holly and Hendrick, the latter administered upon his estate, and that he returned in his inventory an interest of one-eighth in the lands in controversy; that there was an agreed partition of the property of the estate among the heirs, which in 1850 was approved by the court, and in which one-half of that eighth interest was set apart to each of two of the heirs, neither of whom was Holly or Hendrick Arnold. From the comptroller's certificate it appeared that the land was rendered for taxes in 1847 by Hendrick Arnold in the name of Catherine Arnold as owner; that in 1848 it was not rendered; that in 1849 and 1850 it was assessed to H. Arnold, and that in 1851 and 1852 it was assessed as the property of Holly Arnold. It appeared upon the tax list of Hendrick Arnold for 1849, but did not appear upon the list of Holly for that year.

Mary A. Adams, who was a daughter of Hendrick Arnold, was the sole witness as to the heirship of her grandfather Daniel Arnold. Upon that point her testimony was as follows: · "That Daniel Arnold was the son of Catherine Arnold" and "that Catherine Arnold had but one child that witness ever knew or heard of—that if she ever had any other child witness never heard of it. His name was Daniel Arnold." With the ex-

·ception of the fact that she knew Daniel Arnold, this is.all of her testimony which bears upon the question or indicates the source of her knowledge of the facts.

One of the assignments of the plaintiff in error in the Court of Civil Appeals and in this court calls in question the sufficiency of the evidence to support the verdict, but the others complain of the rulings of the trial court in the admission and exclusion of evidence and of the charges given and refused. All the assignments in the Court of Civil Appeals were carefully considered by that court and were, as we now think, correctly determined; and as to most of them it would serve no useful purpose to discuss them in this opinion. It would be merely to repeat in effect what has already been well said.

But we granted this writ upon two grounds. We were inclined to think in the first place that the court erred in its charge as to the plaintiff's claim of title from a common source; and in the second, that the evidence indisputably showed that he had a small but definite interest in the land. A careful consideration of the case satisfies us that we were mistaken as to both propositions.

It has been held in this court that a void tax deed is evidence to show that the parties claim title from a common source where it appears that the defendant asserts no other title save that emanating from that source. (Garner v. Lasker, 71 Texas, 491; Burns v. Goff, 79 Texas, 236.) But it was also held in Howard v. Masterson, 77 Texas, 41, that the plaintiff there did not show a sufficient claim of common source on part of the defendant, by exhibiting a sheriff's deed, which purported to convey the interest of the plaintiff's grantor and of another defendant in the execution in the land in controversy. The principle decided was, that a grantee in a deed which purports to convey the interest of two or more persons in the land, but which does not specify the particular interest of either, does not by accepting the conveyance admit a previous title to any specific interest in either the one or the other. At least in a voluntary conveyance by two grantors, the acceptance by the grantee is an admission that both had an interest, but unless the specific interest intended to be conveyed is named or described, it is not such an assertion of title to any interest in either one of the parties as will enable the plaintiff to recover any definite interest, by showing in connection with the deed a superior right to the interest of that grantor whose title he claims to own. That principle applies to this case. The tax deed which is relied upon as showing that the parties all claim under Hendrick Arnold as the common source purports to convey, as we have seen, not only his title, but also that "of every other claimant whomsoever in and to" the land. We need not pause to inquire whether, if the tax sale had been valid, it would have conveyed the title of any person other than Hendrick Arnold, in whose name the lands were assessed. It is the purport of the deed that we are concerned with; and it purports to convey the title of the owner, whomsoever he may have been. It cannot reasonably be said that a purchaser under such a deed has asserted title to the premises at-

tempted to be conveyed in any person whatever. James may have thought, when he bought at the tax sale, that he was acquiring the title or a claim upon the title of some owner other than Hendrick Arnold, either known or unknown. Besides, so far as we can see from the evidence, if Hendrick Arnold had any interest in the land in controversy, Holly Arnold, through whom defendants claim, had an equal right; and it may be that his sole purpose in taking the conveyance from James was to remove a cloud from his own title. We conclude that the plaintiff wholly failed to prove a superior title from a common source, and that the court might properly have charged the jury not to consider the tax deed for any purpose.

Is the verdict of the jury against the evidence? In other words, does the evidence show beyond controversy that Hendrick Arnold at his death had an interest in the land? If he did, the plaintiff unquestionably inherited a part of that interest. We note here that the land was patented in two surveys of a half a league each; but that as shown by the plaintiff's petition and the map in evidence they adjoin each other and constitute in fact one tract. Hendrick Arnold, as administrator of the estate of Daniel Arnold, in his inventory, claimed only a one-eighth interest of the league as the property of the estate. Since the administrator was an heir of the estate, this was an admission against his own interest and a potent fact to show that at Daniel Arnold's death he owned only a one-eighth interest in the league. Unless there is indisputable evidence to show that Daniel Arnold was the sole heir of Catherine Arnold, it admits of the construction that he inherited from her only one-eighth. Admitting, for the sake of argument, that the testimony of Mrs. Adams standing alone may have been sufficient to warrant the jury in finding that he was the sole heir, we are of the opinion that it cannot be deemed conclusive upon the question. The witness says she knew Daniel Arnold, that he was the son of Catherine, but when asked the question, whether Catherine had any other children, she guardedly says in effect, that she never heard of any. And we are left with that naked statement. It does not follow, because she had never heard of other heirs, that they did not exist. The person as to whose heirs she was testifying was her great grandmother. She does not say she had been told by the members of the family that Daniel was the sole heir, nor does her testimony show that she was in such a position that if there were other heirs she must have heard of them. In pursuance of the inventory, when the estate was divided by the heirs the eighth interest alone was taken into the partition and no part was set apart to Hendrick Arnold. If Daniel had been the sole heir and owned at his death the entire property in the land, how came the heirs to set apart in the division the eighth undivided interest and to make no disposition or mention of the other seven-eighths? Under the circumstances, we think the facts authorized the jury to find that Daniel Arnold owned only one-eighth interest in the land at the time of his death. The evidence also warranted a finding that this interest had been set apart to heirs other-

than Hendrick Arnold. The jury evidently so found and the Court of Civil Appeals has approved the verdict. We cannot say that the finding is without evidence to support it.

The evidence as to the rendition of the land for taxes tended to show that both Holly and Hendrick Arnold had asserted claim to the land a short time after their father's death, and were circumstances to be considered by the jury in determining the issues submitted to them. But they could have no controlling effect either way.

We are of the opinion, that the judgments of the District Court and of the Court of Civil Appeals should be affirmed, and it is so ordered.

*Affirmed.*