## HUGH P. GASTON v. KENNETH MAY and Others.[1]

December 27, 1912.

Nos. 17,976—(87).

**Ejectment — adverse possession — findings.**

> Action of ejectment to recover possession of land of which, the complaint alleged, the plaintiff's intestate died seised. The answer alleged title in one of the defendants, under whom the others claimed, by adverse possession. Evidence as to such adverse possession considered, and *held*, that the finding of the trial court to the effect that the intestate died seised of the land is not sustained by the evidence.

Action in the district court for Washington county by the administrator of the estate of William K. Gaston, deceased, to recover possession of certain premises. The case was tried before Stolberg, J., who made findings and as conclusion of law found that at the time of his death William K. Gaston was the owner of the premises and that plaintiffs were entitled to the possession thereof. From an order denying defendants' motion for a new trial, they appealed. Reversed and new trial granted.

*Manwaring & Sullivan* and *J. C. Nethaway,* for appellants.

*Daniel W. Doty,* for respondent.

START, C. J.

This action was brought in the district court of the county of Washington to recover from the defendants the possession of lot 4 of section 23, in township 31, range 20. The complaint alleged that plaintiff's intestate was the owner of the land in fee at the time of his death, and that the defendants were in possession thereof and wrongfully withheld it from the plaintiff. The answer of the defendant May denied that the plaintiff's intestate died seised of the land, and alleged title thereto in himself by adverse possession thereof, by virtue of a tax deed therefor, and also asserted a lien upon the land for

[1] Reported in 138 N. W. 1025.

taxes paid, in case his title for any reason failed. The reply put in issue the affirmative allegations of the answer, and alleged that the rental value of the land during the time it was occupied by the defendant May equaled the amount of the taxes paid.

The case was tried by the court without a jury, and findings of fact and conclusions of law were made to the effect that the plaintiff's intestate died seised of the land, and that the plaintiff have judgment for possession thereof, and that none of the defendants has any title or right to or in the same. The defendants made a motion for a new trial, on the ground that the trial court erred in its finding of fact as to the ownership of the land, for the reason that it is not sustained by the evidence, and on the ground of newly discovered evidence. The motion was denied, and the defendants appealed from the order denying it.

The controlling question presented by the record for our decision is whether the finding as to the ownership of the land, eliminating all questions as to the validity of the tax deed, is sustained by the evidence. The question involves a consideration of the evidence as to the defendants' adverse possession.

The evidence, which is practically undisputed, establishes the evidentiary facts following: A patent for the land was issued by the United States to Henry McKenty, who, on September 18, 1858, conveyed the land to Angelina G. Wadge, who, on June 21, 1887, executed a deed purporting to convey the land to William K. Gaston, the plaintiff's intestate. He never recorded his deed, but it was recorded after his death, and on December 18, 1908. No taxes on the land were ever paid by any of the holders of the record title since 1858. The land was sold for the taxes thereon for 1859 to 1871, and a tax deed purporting to convey the land was made to Morgan May on September 17, 1872, and recorded on that day. He and those claiming under him paid annually all the taxes thereon from 1872 until 1908, when this action was commenced. When May got his tax deed, he owned land on three sides of the land in question. There was a tamarack swamp and a cranberry marsh on part of the land, and the rest of it was better adapted for pasture than for cultivation. Morgan May and those claiming under him, after he received and

recorded his tax deed, pastured the land, controlled the cranberry crops thereon, by permitting parties to gather them on shares, and cut fence posts thereon from time to time. In the latter part of August, 1888, 25 acres of the land was inclosed with a fence, which was kept up until April 1, 1903, or for 14 years and 7 months. The land was used by Morgan May and his tenants as a pasture. The land was not actually inclosed by a fence between April 1, 1903, and the year 1907, nearly all of the fence having been removed on the first-named date; but a portion of the fence posts remained standing during this time, and Morgan May and those claiming under him continued to pay each year the taxes on the land. Other than this, there is no evidence that there was any abandonment of the possession of the land when the fence was removed. On June 5, 1905, Morgan May conveyed the land by quitclaim deed to his son, the defendant Kenneth May, who, in the year 1906, granted permission to his co-defendants to erect a summer cottage on the land. They did so, and have ever since occupied it.

The law applicable to the evidentiary facts is well settled. Adverse possession of land may be shown by a variety of acts, depending on its location, nature, and beneficial uses to which it may be reasonably applied; but they must be such as clearly to indicate that a permanent occupation and appropriation of the land in hostility to the true owner is intended. There may be, in exceptional cases, adverse possession without either buildings, fences, or actual residence on the land. Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060; Wheeler v. Gorman, 80 Minn. 462, 83 N. W. 442; Holmgren v. Isaacson, 104 Minn. 84, 116 N. W. 205. A careful consideration of the undisputed evidence, and the evidentiary facts which they prove, have led us to the conclusion that the preponderance of the evidence is so manifestly against the court's finding to the effect that plaintiff's intestate died seised of the land in question that there must be a new trial, on the ground that the finding is not sustained by the evidence.

We do not deem it necessary to discuss the evidence in detail. It shows beyond a reasonable controversy that the holders of the record title of the land never paid a dollar for taxes thereon for some 50

years, and that the holder of the tax title and those claiming under him annually paid the taxes during that time, which clearly indicates that he in good faith believed and claimed that he owned the land, and, further, that for 14 years and 7 months the land was inclosed by a fence, and so used as concededly to constitute adverse possession during the time stated. The mere fact that the fence was then removed, leaving the posts intact, does not justify the inference that the continuity of the adverse possession was interrupted. It is unnecessary to discuss or decide the question as to the validity of the tax deed.

Order reversed, and new trial granted.