## MARTIN SKALA v. JOHN LINDBECK AND ANOTHER.[1]

June 3, 1927.

No. 26,076.

**Defendant acquired title by adverse possession.**

1.   The evidence supports a finding that the defendant had acquired title to certain land by adverse possession.

**Maintenance of adverse possession.**

2.   The law prescribes no particular manner in which such possession shall be maintained or made manifest.   Much depends on the nature and situation of the land and the uses to which it is adapted. The requirement of actual and visible occupation is more imperative in an old and populous country than in a new country.

**Hostile possession.**

3.   To be hostile, possession must be taken with intent to claim and hold the land against the true owner and the whole world, but in the beginning adverse possession may be a mere trespass.

**Strengthening adverse possession by conveyances.**

4.   A disseizor may strengthen his adverse claim by taking as many conveyances from those claiming or having an interest in the land as he sees fit.

**Effect of shifting fence from place to place.**

5.   Where the limits of the disseizor's possession are defined by a fence, the fact that the fence is shifted from place to place does not destroy the continuity of possession of so much of the land as at all times is inclosed by the fence.

**When payment of taxes not essential.**

6.   Payment of taxes by the disseizor, unless the land is separately

[1]Reported in 214 N. W. 271.

assessed, is not essential to his right to claim title by adverse possession.

**Acquisition of title even if fence is not on true boundary.**

7. Title by adverse possession may be acquired although the parties in interest occupy up to a fence in the mistaken belief that the fence is on the true boundary line between their land.

Adverse Possession, 2 C. J. p. 79 n. 98, 1; p. 105 n. 74; p. 106 n. 76; p. 114 n. 76 New; p. 129 n. 85, 96; p. 139 n. 61; p. 204 n. 21 New; p. 276 n. 59.

Plaintiff appealed from a judgment of the district court for St. Louis county, Fesler, J.   Affirmed.

*A. J. Thomas,* for appellant.

*Washburn, Bailey & Mitchell,* for respondents.

LEES, C.

This is an action in ejectment in which the defendant John Lindbeck claimed title by adverse possession and asked the court to determine the true boundary line between his land and that of the plaintiff.   Lindbeck's wife was joined as a formal party, but when we say defendant we refer to the husband.

The land which is the subject of this action consists of the southerly 6.2 acres in the southeast quarter of the northwest quarter of section 23-63-12, in St. Louis county.   Plaintiff has the record title to that 40, hereafter designated as the north 40, and defendant to the 40 on the south, hereafter referred to as the south 40.

The court found that defendant had acquired title by adverse possession to the southerly 4.7 acres of the parcel in question, but not to the northerly 1.5, and established the boundary line between the two parcels.   Plaintiff's motion for a new trial was denied and judgment entered.   The appeal is from the judgment.

Many years ago the town of Spalding was platted on the south 40 and other governmental subdivisions of section 23, not including the north 40.   The plat was laid out by metes and bounds and, when the lines are run out on the land, they embrace the 6.2 acres in

controversy. Defendant entered upon and began to occupy the south 40 in 1904. He built a house and a fence north of the north line of the 40. He kept cattle on the land continuously, cultivated a portion of it, and increased the size of the clearing from year to year. For the past five years he has lived on the land continuously. He was a trespasser in the first instance. Later he purchased from the holder of the record title. The title has been registered under the so-called Torrens act and now stands in defendant's name. The certificate includes the 6.2 acres in controversy, as well as the south 40.

The evidence shows that defendant's first fence was located some little distance north of the 6.2-acre tract. In 1915, when plaintiff acquired title to the north 40, the fence was moved south and placed on the line dividing the south 4.7 acres from the north 1.5 acres of the 6.2-acre tract. There it remained until shortly before this action was commenced. Apparently both parties believed it was located on the true boundary line between their respective holdings. In 1921 the defendant had a survey made. The surveyor followed the description in the certificate of title and located the boundary line north of where the fence stood and on the north line of the 6.2-acre tract. In 1924 the plaintiff had a survey made. The surveyor located the south line of the north 40 in accordance with the original government survey, which coincides with the south line of the 6.2-acre tract. Thereupon plaintiff took down the fence and moved it to the last mentioned line. Defendant removed it to the north line of the 6.2-acre tract, and thereupon this action was brought to settle the dispute.

Something is said in the briefs about the effect of the registration of the title, it being suggested that as a result defendant acquired title to the whole of the 6.2-acre tract, but, since defendant has not appealed from that portion of the judgment which awards the north 1.5 acres to the plaintiff, we will not stop to consider the point.

[1] We find ample evidence in the record to support the finding that for more than 15 years prior to the commencement of the action the defendant had been in the actual, open, continuous and

exclusive possession of the 4.7 acres under a claim of right and in hostility to the adverse claim of plaintiff. This establishes title by adverse possession. Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551.

[2] The law prescribes no particular manner in which possession shall be maintained or made manifest. It must be of such a character as to be unequivocal notice to the true owner that someone is in possession in hostility to his title. Much depends on the nature and situation of the land and the uses to which it is adapted. The requirement of actual and visible occupation is more imperative in an old and populous country than in a new country in which the land is only partially improved, such as the portion of St. Louis county in which this land is located. These general observations are based largely on Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220; Costello v. Edson, 44 Minn. 135, 46 N. W. 299; Barber v. Robinson, 78 Minn. 193, 80 N. W. 968; Wheeler v. Gorman, 80 Minn. 462, 83 N. W. 442; and Gaston v. May, 120 Minn. 154, 138 N. W. 1025.

[3] It is urged that defendant's entry was not hostile. In Rupley v. Fraser, 132 Minn. 311, 156 N. W. 350, it was said that, to be hostile possession must be taken with intent to claim and hold the land against the true owner and the whole world, but that does not mean that the occupant must claim ownership in fee when he enters into possession. As was said in Costello v. Edson, supra, "All adverse possession is a trespass."

[4] The fact that defendant took a conveyance from the owner of record does not defeat his claim by right of adverse possession. A disseizor may strengthen his adverse claim by taking as many conveyances from those claiming or having an interest in the land as he sees fit. Dean v. Goddard, 55 Minn. 290, 296, 56 N. W. 1060.

[5] The fact that the fence was shifted about on several occasions does not defeat a recovery. All of the land awarded to defendant lies south of fences he maintained for more than 15 years upon what he supposed to be the north line of his land. None of the fences were maintained south of the line determined by the court to be the north boundary line of defendant's land.

[6] The fact that defendant paid no taxes on the 4.7 acres is of no importance. There is no proof and it is not to be supposed

that this land was separately assessed. See G. S. 1923, § 9187; Post v. Sumner, 137 Minn. 201, 163 N. W. 161; and Kelley v. Green, 142 Minn. 82, 170 N. W. 922. Presumably the assessor, as well as the parties, considered the fence to be the boundary line between the two 40's and valued the south 40 on the assumption that the improved land south of the fence was part thereof.

[7] The fact that the parties may have mistakenly supposed that the fence was the boundary line between their respective holdings, or that they occupied up to the fence under a mistake, does not defeat the acquisition of title by adverse possession. Stevens v. Velde, 138 Minn. 59, 163 N. W. 796.

Judgment affirmed.