## MEADERS et al. v. MOORE et al.

### No. 5176.

Court of Civil Appeals of Texas. Texarkana.

Dec. 27, 1937.

Rehearing Denied Jan. 13, 1938.

690

Frank C. Bolton and W. W. Caves, both of Henderson, Austin F. Anderson, of Fort Worth, and Wheeler & Kenyon, of Gainesville, Ga., for appellants.

McEntire, James & Shank, and Clower & Sewell, all of Tyler, James Young, of Henderson, and I. M. Williams, of Dallas, for appellees.

HALL, Justice.

Jediah Blackwell and wife, Nancy, came to Texas from the state of Georgia about 1850, and in 1852 purchased a tract of land, a part of the M. J. Prue survey in Rusk county. They made their home on this land until their respective deaths, in 1874 and 1879. The land in controversy here is a part of the Jediah and Nancy Blackwell original tract which was by order of the district court of Rusk county, dated February 2, 1895, partitioned among their heirs. Blocks 5 and 6, of a 310-acre tract in this partition, containing 80 acres of land, were awarded jointly to the heirs of Rebecca Anderson, the heirs of Jesse Blackwell, the heirs of Elizabeth Edge, the heirs of Eliza Thompson, and the heirs of John Blackwell. Rebecca Anderson, Jesse Blackwell, Elizabeth Edge, Eliza Thompson, and John Blackwell at the time of the decree of partition were deceased children of Jediah and Nancy Blackwell. Heirs of Jesse Blackwell, John Blackwell, and Elizabeth Edge are appellants in this case.

Appellee W. P. Moore went into possession of blocks 5 and 6 in 1908 without any evidence of title from any one and has remained in possession thereof, according to his evidence, under a claim of right, until the present. In 1912 Moore purchased from one of the heirs, a tenant in common with the other heirs who had by judicial decree been awarded an undivided interest in Blocks 5 and 6. In 1917 he purchased from another heir an undivided interest in the land; and in 1922 he purchased from still another heir another undivided interest in said land. Each of said deeds made special reference to the decree of partition of 1895 by reference to book and page in the district court civil minutes.

On May 28, 1931, appellees brought suit against Jesse and their unknown heirs and

others in trespass to try title to recover the land in controversy. Service was by publication, and eighty-four of the defendants so cited filed answers by attorneys of their choice. Appellees by amended petition filed in January, 1932, in addition to their trespass to try title, specially pleaded title by limitation by virtue of the 3, 5, 10, and 25 year statutes of limitation, and, in the alternative, improvements in good faith. The heirs of Jesse and John Blackwell did not appear, and the trial court appointed T. A. Bath attorney ad litem to represent them. Said attorney filed an answer for them, including general demurrer, general denial, and plea of not guilty. The court also appointed W. W. Caves guardian ad litem to represent the minors Nina Blanche Jones, Adri Pat Jones, and Frank Walker Jones, who claimed to be the heirs of Elizabeth Edge, and he filed an answer similar to that filed by attorney ad litem Bath. The cause went to trial, and on January 23, 1932, judgment was rendered for appellees and against appellants and others for title and possession of the land in controversy. On April 14, 1933, appellants heirs of Jesse and John Blackwell filed through attorneys of their choice their petition in the district court in the nature of a bill of review seeking to set aside the judgment rendered against them January 23, 1932, and on September 25, 1933, said judgment was vacated by the trial court and a new trial granted. On January 18, 1934, appellants heirs of John and Jesse Blackwell filed their amended answer and cross-action in which they alleged ownership in an undivided four-fifteenths interest in the land in controversy as tenants in common with appellee W. P. Moore and his assignees of mineral interests. The minor appellants filed a similar answer. Appellees in May, 1934, dismissed as to all appellants and answered under a plea of ten-year statute of limitation and for improvements in good faith. Thereafter appellees in the trial court occupied the position of cross-defendants and appellants that of cross-plaintiffs. The cause was tried to a jury on the following three special issues:

"No. 1: Do you find from a preponderance of the evidence in this case that W. P. Moore, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land in controversy in this suit, cultivating, using or enjoying the same, for any period of ten years, or longer, prior to April 14, 1933?"

"No. 2: Do you find from a preponderance of the evidence in this case that the plaintiffs herein knew that the defendant, W. P. Moore, was claiming the land in controversy in this suit adverse to them?"

"No. 3: Do you find from a preponderance of the evidence in this case that the defendant, W. P. Moore, asserted adverse possession, in any, to the property in controversy in this law suit against the plaintiffs such as was and is of such unequivocal notoriety that the plaintiffs would be presumed to have notice of such adverse claim and possession?"

The jury answered these issues favorably to appellees, and judgment was rendered accordingly. Appellants the heirs of Jesse and John Blackwell and the Jones minors appealed to this court.

Appellants' third proposition is: "Appellees' plea of the ten year statute of limitations failed in spite of any hostile entry of W. P. Moore in 1908 because by the repeated recognition and purchase of the superior outstanding titles, claims and better rights of other owners by appellees at intervals of less than ten years each, beginning in 1912 and continuing until after they filed this suit, such possession of W. P. Moore, and the other appellees claiming under him, lost its hostile character, and all prior adverse possession was destroyed."

All parties to this appeal both in their written briefs and oral argument concede that there is only the question of limitation involved in this appeal. We agree with this concession. Appellee W. P. Moore testified that he went into exclusive possession of the land in controversy in the spring of 1908, fenced the entire tract, and used it for a pasture for his cattle. As said before, he took possession of the land without a deed to the whole or any part thereof. On April 8, 1912, Moore took a deed from Jesse Blackwell and wife (not the original Jesse) to an undivided interest in the land. This deed is as follows:

"The State of Texas }
"County of Rusk

"Know All Men by These Presents:

"That we, Jesse Blackwell & wife Maggie N. Blackwell of the County of Rusk and State of Texas, for and in consideration of the sum of Two Hundred ($200.00) Dollars, to us paid by W. P. Moore, ($200.-

00) as follows: cash, receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents do grant, sell, and convey unto the said W. P. Moore of the County of Rusk, State of Texas.

"All that certain parcel or tract of land situated in Rusk County, State of Texas, more fully described as follows: Situated about 10 miles West of Henderson, Texas, and out of the M. J. Prue Headright survey, same being an undivided ⅛th interest in Blocks 5 and 6 out of the M. J. Prue survey, as shown in subdivision of 310 acres in the division of Jeddiah Blackwell estate said block Nos. 5 and 6 are shown on page 471 Vol. 1 of District Court Minutes of Rusk County, Texas, to which reference is hereby made, the above described parcel of land was deed * * * to R. J. Blackwell by the heirs of Rebecca Anderson, August 11th, 1905.

"Also ⅔ of ⅓ undivided interest out of M. J. Prue headright survey. Said Blocks 5 and 6 of the subdivision of the 310 acres of the division of Jeddiah Blackwell estate of said Blocks 5 and 6 as shown on page 471 Vol 1 of District Court Minutes of Rusk Co. Texas, to which reference is hereby made, same being deeded to R. J. Blackwell by heirs of John Blackwell (deceased).

"Both of the foregoing described tracts of land were set aside to the heirs of John Blackwell and others in the division of the estate of Jeddiah Blackwell, as above set out.

"The No. of said case being 1179 in the District Court of Rusk Co. Texas. The foregoing described tracts of land was deed to Jesse Blackwell by R. J. Blackwell on 23rd day of Nov 1910.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said W. P. Moore heirs and assigns forever.

"And we do hereby bind ourselves, heirs, executors and administrators to warrant and forever defend, all and singular the said premises unto the said W. P. Moore, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands at Overton, this 8th day of April, A. D. 1912.
 "Jesse Blackwell.
 "Maggie N. Blackwell."

On June 13, 1917, by a deed from Emma Tucker, Teressa Wood, and J. O. Tucker, Moore took title to another undivided interest in said land; and on September 30, 1922, by deed from Joel Eaton he took title to still another undivided interest in said land. These last two deeds are similar to the one copied above in that each conveys an undivided interest in blocks 5 and 6 of the estate of Jediah Blackwell, and each makes special reference to volume 1, p. 471, District Court Minutes of Rusk County, Tex. On January 23, 1932, the date of the first judgment, Moore and the other appellees settled with eighty-four claimants to this land by and through an attorney of their choice, paying for said claims the aggregate sum of $35,000. No deed or memorandum of title passed on this occasion from these claimants to Moore. The testimony is that they permitted Moore and the other appellees to secure a judgment against all the defendants, they included, after which the money was paid to their attorneys as agreed.

 It is the contention of appellants that the acts of appellee Moore in taking the three deeds above referred to, each conveying an undivided interest in the land in controversy, each making specific reference to the record containing the decree of partition awarding this land to certain of the heirs of Jediah Blackwell, and the settlement by all appellees with the eighty-four claimants in January, 1932, constituted them tenants in common with the remaining joint owners of said land under said partition decree of Jediah Blackwell's estate, and that each separate transaction represented by the deeds and settlement was sufficient in law to, and did, interrupt any adverse holding by Moore against the heirs named in such partition decree and heirs of the heirs so named not parties to said deeds and settlement. We do not think that the taking of the deeds and the making of the settlement had this effect. The evidence, to our minds, shows conclusively that Moore entered into possession of the entire tract of land in 1908, without permission of any one, and in hostility to the legal owners of same. His entry was nothing more than a trespass against the true owners and was in law an ouster, Lewis v. Terrell, 7 Tex. Civ.App. 314, 26 S.W. 754, and appellants' cause of action for possession of this land accrued at that time. The facts show, further, that in 1908 Moore fenced the entire tract and used it as a pasture until the dis-

covery of oil in the East Texas field in 1931; that his possession was exclusive, open, and notorious to such an extent that this land was generally known in the community as Moore's land. This character of possession has not changed from the date of his original entry. When Moore took the deed in 1912 to an undivided interest in this land his exclusive, open, and notorious possession of the whole tract was in nowise changed. He continued to hold and claim the entire tract against all persons. The same is true with respect to the making of the deeds in 1917 and 1922, and the settlement in 1932. The acts of Moore in taking the deeds of 1912, 1917, and 1922, from a part of the heirs and making the settlement in 1932 with other heirs, after the ouster in 1908, did not, in our opinion, as a matter of law, constitute him a tenant in common with appellants. York v. Hutcheson, 37 Tex.Civ.App. 367, 83 S.W. 895; Lewis v. Terrell, supra; John L. Roper Lbr. Co. v. Richmond Cedar Works, 168 N.C. 344, 84 S.E. 523, Ann.Cas.1917B, 992, and authorities there cited. This for the reason that the beginning of his claim of title was not based upon any of the deeds or settlement agreement and was not contemporaneous with either, but upon the ouster in 1908. These deeds and settlement agreement did in no way affect Moore's relation to appellants who were not parties to said instruments and not bound by any of the terms thereof. The relation of cotenancy in most cases is agreeable. It is never hostile. It has its inception usually in a common bond and cannot comprehend adverse claims. Roberts v. Thorn, 25 Tex. 728, 78 Am.Dec. 552; Rippetoe v. Dwyer, 49 Tex. 498; Hickman v. Ferguson, Tex. Civ.App., 164 S.W. 1085. Cotenancy is not an estate but a relation between persons. Welch v. Armstrong, Tex.Civ.App., 62 S.W. 2d 335, writ refused. No such relation has ever existed between Moore and appellees. They never knew or heard of each other before this lawsuit. There is not a recitation in either of the deeds to Moore which can be construed as a recognition of the title of appellants. The reference in said deeds to the effect that the land in controversy was a part of the Jediah Blackwell estate partitioned among certain of his heirs did in no way affect the adverse claim of Moore to the whole of said land. This reference, in our opinion, may be regarded as descriptive of the land conveyed. His holding of the whole estate begun in 1908 was antagonistic to them and hostile to their title. Moore had no dealings or communications with any of appellants, and their relation was that of strangers to each other. Lewis v. Terrell, supra; Naylor & Jones v. Foster, 44 Tex.Civ.App. 599, 99 S.W. 114. We can perceive no difference in Moore's situation holding the whole of said land as a naked trespasser by virtue of his ouster in 1908 than if he were holding said land under a deed to the whole which conveyed no title. Both the trespass and the invalid deed would in law constitute an ouster of the true owners. If Moore had gone into possession of the land in 1908 under a deed that conveyed no title and had complied with the statutes respecting limitation under the five years statute, the taking of the deed in 1912 from an heir to a portion of the land described in his deed to the whole would not, as a matter of law, effect a recognition of a title in the other heirs not joining, nor constitute Moore a tenant in common with them. John L. Roper Lbr. Co. v. Richmond Cedar Works, supra; Elder v. McClaskey, 6 Cir., 70 F. 529; City of St. Paul v. Chicago, M. & St. P. Ry. Co., 45 Minn. 387, 48 N.W. 17. So with a title begun, as in this case, in 1908 by trespass against the true owners, a deed to an undivided interest in the land taken by Moore before his title had ripened under the ten-year statute of limitation would not necessarily be a recognition by him of the title of the other interested parties not joining in said deed nor a repudiation of his adverse claim begun in 1908. And this would be true also with respect to the 1917 and 1922 deeds. In 2 C.J.S., Adverse Possession, p. 717, § 151, b, it is said: "An adverse claimant in possession does not necessarily abandon a holding under color of title or interrupt his adverse possession by purchasing an outstanding interest of a tenant in common of another alleged title. Under this principle there is no recognition of a superior title in another where the adverse claimant takes a deed from one of several coheirs of another claimant." This rule has been followed in this state. Houston Oil Co. v. Davis, 62 Tex.Civ.App. 658, 132 S.W. 808, Id., Tex.Civ.App., 181 S.W. 851; Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705; and by the Supreme Court of Minnesota in Skala v. Lindbeck, 171 Minn. 410, 214 N.W. 271.

█ It is true Jesse Blackwell testified that Moore approached him with reference to buying his, Jesse's, interest in the land, and that Moore did not take possession of this land until 1912, the date of the deed

694

from Jesse to Moore, but Moore's contention is that in taking the deeds and making the settlement he was simply buying in claims against the land already possessed by him for four years and did not intend to, and did not, recognize the title of appellants to said land. One should always be permitted to buy his peace by purchasing outstanding claims or undivided interests in the land claimed by him without injuriously affecting his adverse claim to same. In Freeman on Cotenancy & Partition, § 106, the author says: "A person in possession of land may protect himself from litigation by purchasing any outstanding claim against his property. By so purchasing he does not necessarily admit the superiority of the title bought, not change his possession, which was before adverse, into a possession subordinate to the newly acquired title. Therefore one who is in possession of real estate does not become a tenant in common thereof by merely accepting a deed therefor from the owner of an undivided interest therein." Cannon v. Stockman, 36 Cal. 535, 95 Am. Dec. 205.

We conclude, then, from all the facts in this case, as held by the El Paso Court of Civil Appeals in this same case on a former appeal, Moore v. Blackwell, 85 S.W.2d 980, writ dismissed, that the issue of limitation under the ten-year statute in favor of Moore and his lessees was raised by the evidence and that said issue was properly submitted to the jury by the trial court.

The following remarks of appellees' counsel in his argument to the jury forms the basis of appellants' assignment of error No. 31: "Gentlemen of the Jury: I want to warn you against being swept off your feet by the silver-tongued gentleman who will follow me—Judge Wheeler. I know you are going to like him. I like him myself. I am very fond of him. He will talk so nice to you in his closing argument that he will almost have you thinking that he is going to move to Henderson as soon as he can go back home and pack up his duds. But just keep in mind that he is wanting something at your hand; that every time he comes to Henderson he comes after something. He is here after something now. He wants to carry back to Georgia with him a deed to some of Walter Moore's land. Now, gentlemen, all I ask of you is that you do your own thinking when you come to pass upon these issues which the court has submitted to you, and that you not allow Judge Wheeler to ram down your throats his own conclusions about the facts and issues in this case. Just use your own heads in this law suit, like you would use them about your own affairs."

No objection was urged to this argument at the time it was made. It is contended by appellants that the argument was so prejudicial in its nature and inflammatory in its character that an objection thereto was not necessary. We do not so regard this argument. Given its strongest meaning, it was but the expression of a deep, and we may say a well-founded sense of fear on the part of appellees' counsel of the argument that was to follow. The argument was actually complimentary to Judge Wheeler and included an expression of fondness on the part of appellees' counsel for him. The reference to Judge Wheeler's wanting to take a deed to some of the property in controversy back to Georgia with him was not calculated to engender sectional feeling in the minds of the jury. True it is that Judge Wheeler, one of the leading counsel for appellants, and a great number of the appellants, are citizens of the state of Georgia. But we do not think it can be truthfully said that there is any sectional feeling in Rusk county, Tex., against the grand old Southern Commonwealth of Georgia, the birthplace of the ancestors of appellants. The argument taken as a whole is not of such character as, in our opinion, would warrant a reversal of this case, especially in the absence of objection made thereto at the time. Robbins v. Wynne, Tex.Com. App., 44 S.W.2d 946; Texas & N. O. R. Co. v. McGinnis, Tex.Com.App., 109 S.W. 2d 160.

We have carefully examined all other assignments of error brought forward by appellants, and, in our opinion, they are without merit, and are therefore overruled.

The judgment of the trial court is in all things affirmed.

### On Motion for Rehearing.

In their motion for rehearing, appellants, among other things, assert that the case of Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705, 708, relied on by us in our opinion in this case, has been overruled by the later case of Blum Land Co. v. Rogers, 11 Tex.Civ.App. 184, 32 S.W. 713, writ of error denied. We have carefully examined all the cases citing Converse v. Ringer, supra, and we find that a portion of the opinion in that case was criticized in the Blum Case. But we also find that the

holding in Converse v. Ringer, supra, was upheld and approved in Price v. Eardley, 34 Tex.Civ.App. 60, 77 S.W. 416, writ denied, in which case the holding in the Blum Case was overturned. Hendricks v. Huffmeyer, 15 Tex.Civ.App. 93, 38 S.W. 523, affirmed by Supreme Court, 90 Tex. 577, 40 S.W. 1, also expressly approved the holding in Converse v. Ringer, supra. Numerous other cases have cited with approval the Converse v. Ringer opinion, and we are convinced that it is an authoritative holding of the matters discussed therein.

It could serve no good purpose to discuss further the matters contained in our original opinion.

Therefore, the motion for rehearing is in all things overruled.