## T. A. SMITH ET AL. v. M. J. DAVIS ET AL.

### Delivered March 26, 1898.

**1. Trespass to Try Title—Common Source.**

The statutory rule in article 5266, Revised Statutes, providing that it shall not be necessary for plaintiff in trespass to try title to deraign title beyond a common source, applies in cases where the title is specially set out in the pleadings, and also in suits brought for partition but converted into actions to try title as well as for partition.

**2. Same—Effect and Application of Rule.**

Where the plaintiff proves common source and a superior title under it, he is entitled to recover, unless the defendant shows a title superior to the common source which he has acquired, or that the title never vested in the common source; and the defendant can not escape the rule by showing a different claim of title under muniments which do not invest title in him.

**3. Same—Proof of Common Source—Special Deeds.**

A deed purporting to convey an undivided half interest in the land, and a special warranty deed, are not quitclaims, and are competent instruments to show common source of title.

**4. Same—Burden of Proof.**

Plaintiffs in trespass to try title alleged their ancestor, B. A., the patentee of the land, as the common source of title, but some of their own evidence, unnecessarily introduced, tended to raise a doubt as to his identity with the B. A., who was the patentee. Because of such question of identity, Held, (1) that it was not error to refuse to peremptorily instruct for plaintiffs on the ground that defendants claimed under a common source; (2) it was error to put upon plaintiffs the burden of proving the identity of their ancestor with the person constituting the common source; (3) under the facts, the burden of proof as to identity should not have been placed on either party; (4) upon the issue of identity it was error to require the jury to find certain detailed facts relating to the life and history of the ancestor, some of which were immaterial, as a basis of such identity.

APPEAL from Ellis. Tried below before Hon. J. E. DILLARD.

*F. N. Read, R. S. Neblet,* and *Leake, Henry & Greer,* for appellants.

*Groce & Skinner,* for appellees.

FINLEY, CHIEF JUSTICE.—This was a suit by T. A. Smith and Sarah J. Abbott, plaintiffs, against M. J. Davis, J. E. Davis, and a number of other defendants, for partition and division of a tract of land of some 500 acres, a part of the one-third league survey situated in Ellis County, patented to Benjamin F Adams. Plaintiffs below (appellants) set out that they were two of the seven children and heirs of said Benjamin F. Adams, and who was dead. That a part of said one-third league survey, to wit, about 500 acres cut off the north end of said survey, is now in possession of defendants (appellees) under claim of title from some of plaintiffs' coheirs and limitations from others. That plaintiffs are entitled to a one-seventh undivided interest each in said tract of 500 acres, but that defendants had refused to divide the same or award the plaintiffs their shares. They set out with more than usual elaboration their family history, and claimed as heirs of one B. F. Adams, who died in Robertson County, Texas, in 1844, and whose estate was administered in that county, and who was alleged to be the patentee of the lands in controversy.

The defendants, appellees here, defended as to different portions of the lands in controversy, each disclaiming except as to the land defended for; and pleading general denial, not guilty, statutes of limitation of five and ten years, and improvements in good faith—except the J. B. Watkins Land Mortgage Company, which disclaimed all interest except as mortgagee of a portion of the lands in controversy. A trial resulted in a verdict and judgment for defendants, and this appeal was prosecuted.

*Opinion.*—Appellants group and present together the following assignments of error:

Second Assignment of Error.—"The court erred in refusing to give in charge to the jury the special charge asked by plaintiffs, number 3, to the effect, that as the defendants had not shown any title in them-

selves to the land sued for, by limitation or otherwise, and as the plaintiffs had shown that the defendants M. J. Davis and J. E. Davis claimed title to one-half of the land described in their answer under a common source with plaintiffs, to wit, under plaintiffs' father, that the jury must render a verdict against the Davises and in favor of plaintiffs for two-fourteenths of the land claimed by the said M. J. Davis and J. E. Davis."

Third Assignment of Error.—"The court erred in refusing plaintiffs' special charge number 4, to the effect that the ancestor of plaintiffs being the common source of title, as to one-half of the land claimed . by M. J. Davis and J. E. Davis, the plaintiffs were entitled to recover from M. J. and J. E. Davis two-fourteenths of the land claimed by them, unless said defendants have shown by a preponderance of the evidence two facts—first, that the land claimed by the said Davises was not granted to plaintiffs' ancestor; and second, that the title of the party who was not the ancestor of plaintiffs, and to whom the land was patented, did not vest in the ancestor of plaintiffs."

Seventh Assignment of Error.—"The court erred in charging the jury as follows: 'The burden of proof rests upon the plaintiffs to show by a preponderance of the evidence that they are the heirs of the person named in the patent to the land in controversy, and if they have failed to do so, then your verdict should be for the defendants; in that the evidence showed that the defendants M. J. and J. E. Davis claimed at least one-half of the land claimed by them in their answer under a common source with plaintiffs, to wit, under the plaintiffs' father; and this being so, the burden of proof was on the defendants to show that the land was not granted to the ancestor of plaintiffs, and that the title of the true patentee had not come into the common source.

The plaintiffs' evidence showed that the land in controversy was patented to Benjamin F. Adams, October 11, 1849. The certificate upon which the patent issued was issued on January 18, 1838, to Benjamin F. Adams by the land board of Washington County. It recites that said Adams proved that he was entitled to one-third league of land; that he had immigrated to Texas in 1835, was a resident at the declaration of independence, had remained and resided in the county, and was a single man. The certificate also showed that it was approved by the traveling board. The land was surveyed by David R. Mitchell, and the certificate located May 11, 1846, and issued, as above stated, in 1849. Their evidence showed that they were the children and heirs of Benjamin F. Adams. In addition to these facts plaintiffs introduced evidence to establish the identity of their ancestor with the Benjamin F. Adams to whom the patent issued. This evidence, in the main, tended to establish such identity; but a part of their evidence had a contrary tendency. It developed the fact that there were three or more Benjamin F. Adamses who came to Texas in the early days and received lands from the government. And one of the plaintiffs, Mrs. T. A. Smith, testified, as family history, that her father died in Texas in 1844,

which was an established fact, and that he came to Texas about four or five years previous to his death. If this statement be accepted as fixing the time when their ancestor came to Texas, he could not have been the Adams who was here at the declaration of independence and received the certificate for one-third of a league of land.

Mrs. Abbott, another one of the plaintiffs, and an elder sister, testified, as family history, that their father came to Texas in the fall of 1835, when Mrs. Smith was a babe in arms.

Plaintiffs also introduced evidence to show common source of title. This evidence consisted (1) of certified copies from the records of certain defectively executed powers of attorney from them and their coheirs to one B. W. Brown, dated in 1859, to look up, take possession of, and sell their interest in lands in Texas belonging to the estate of their father, one of such instruments providing that Brown should receive a half interest as compensation for his services. (2) A deed from said B. W. Brown to James Hogue, conveying *all his right, title, and interest* in and to a one-half interest in several tracts of land, one of which is the survey of which the land in controversy is a part, reciting that the grantor claimed said half interest by virtue of a contract between him and the heirs of B. F. Adams, dated in 1859. This deed bears date October 8, 1872, and was duly acknowledged and recorded. (3) A deed from James Hogue to M. J. and J. E. Davis, dated September 30, 1882, and duly recorded, for the consideration of $689 paid, conveying to them *all right, title, and interest that he owns or may hereafter acquire* in and to the following described tract of land, "situated in Ellis County, a part of the B. F. Adams survey;" then follows a description by field notes of the land, embracing all the land claimed by the defendants, the Davises. This is a special warranty deed.

The defendants introduced deeds to themselves to the land in controversy, their chain of title extending regularly back to the W. N. Howe heirs, and they were shown to have claimed under a void judgment against Benjamin F. Adams. Possession began under this claim in 1859, prior to the time of the deeds from Brown and Hogue.

Defendants also introduced evidence tending to show that plaintiffs' ancestor was not the Benjamin F. Adams to whom the land in question was patented. This evidence consisted in the reintroduction of the documentary evidence previously offered by plaintiffs.

This statement is not intended as a detailed statement of the evidence, but is given merely to point out the issues properly arising from the evidence and the relation of the parties to such issues, and we indicate no opinion upon the weight of the evidence. In the light of this statement of the record we will consider the contentions in relation to common source of title.

Does the doctrine of common source of title apply in this case? Appellees contend that it does not, for these reasons:

1. Plaintiffs specially alleged the title claimed by them, which was asserted to be by inheritance from their father, Benjamin F. Adams,

to whom they alleged the land was patented by the State, and they must recover, if at all, upon the strength of the title deraigned by them. In other words, it is urged that the rule of common source has no application where the plaintiff specially sets out his title in his pleadings. We are cited to no authority in support of this position, and we have found no decision upon the exact point. The general rule in trespass to try title, that where a party specially deraigns his title he must prove the title as alleged, does not settle the question here presented. The inquiry is, whether this rule prevents the plaintiffs who have specially alleged title, from taking the benefits of the rule of common source.

Our statute, article 5266, provides, "it shall not be necessary for the plaintiff to deraign title beyond a common source," and this right is not limited to cases where the title is not specially pleaded.. In Sellman v. Hardin, 58 Texas, 87, Mr. Justice Stayton says: "The evidence showed that the parties claimed title from a common source, and that of appellee being the older, entitled him to recover. The fact that the appellee filed an abstract of title under which he claimed that reached back to the sovereignty of the soil, which he did not establish by proof, did not alter the rule."

Article 5263, Revised Statutes, provides, when abstracts are filed, "in all cases the documentary evidence of title shall, at the trial, be confined to the matters contained in the abstract of titles." If the rule of common source may be applied in cases where the title is set out by an abstract filed under the statute, we can see no reason to exclude it when the title is specially set out in the pleadings.

2. It is asserted that the suit being brought for partition, and not in trespass to try title, the rule of common source does not obtain.

It is sufficient answer to this proposition to say, that the answer of the defendants made a case for the test of titles and converted the suit into an action to try title, as well as for partition.

3. It is insisted that the powers of attorney from the plaintiffs and their coheirs to W. B. Brown were defectively acknowledged, and admitted over objection of appellees, and that the court erred in admitting them in evidence, and for this reason this court should not treat them as legal evidence to show common source. It is urged that article 2312, Revised Statutes, governs in the introduction of such evidence.

These instruments were defective in respect to the acknowledgments, under the laws of this State, and had the certified copies been offered to prove title, they should have been excluded under article 2312, Revised Statutes. Should we concede the correctness of the position, that the certified copies of the powers of attorney should not have been admitted in evidence because they were defectively acknowledged, it would not follow that the evidence of common source should be disregarded by this court. The deed from Brown to Hogue recited that he claimed under a contract with the heirs of Benjamin F. Adams, made in 1859, and it was shown by the testimony of witnesses that plaintiffs and their coheirs executed to B. W. Brown in 1859 these powers of attorney. No

assignment of error is presented to us raising the question of the correctness of the action of the court in admitting the evidence over appellees' objection, and under these conditions of the record, we do not feel called upon to decide the point.

4.   Appellees assert that they showed by evidence that they claimed under a chain of title in which the deeds relied upon by plaintiffs to show common source were not links, and these deeds did not show a common source, unless plaintiffs' ancestor was the Benjamin F. Adams to whom the patent issued.   This contention has reference to the claim under the Howe heirs, who claimed under the judgment held to be void in Mitchell v. Adams, 1 Unreported Cases, 117.   The proposition is that they showed that they claimed title through a different source than plaintiffs' ancestor, unless their ancestor was identified as the patentee, and that this proof destroyed the feature of common source, regardless of the fact that their title run back to and through a void judgment which was not in evidence as proof of title.   This proposition, we think, involves an erroneous view of the doctrine of common source.   When the plaintiff proves common source and a superior title under the common source, he is entitled to recover, unless the defendant shows a title superior to the common source which he has acquired, or that the title never vested in the common source.   West v. Keeton, 17 Texas Civ. App., 139; Rice v. Railway, 87 Texas, 93.

In Burns v. Goff, 79 Texas, 239, it is said by Chief Justice Stayton: "The case of Linthicum v. March, 37 Texas, 350, seems to hold that a defendant may defeat the rule of common source by a declaration that he does not claim under it, as was attempted in this case, but we are of the opinion that such a rule can not be maintained under the statute now in force.   Rev. Stats., art. 4802.

"If defendant has superior right to the land, whether this arises from adverse possession or other fact, this he is not precluded from showing; but in the absence of some evidence on his part tending to show such superior right the plaintiff would be entitled to recover on proof of claim of title by defendant emanating from and under the common source, made in the manner prescribed by the statute."

The authorities lead us to the conclusion that the effect of proof of common source by the plaintiff can not be met and overcome by the defendant merely by showing that he claims the land under another source of title which is defective and legally insufficient as evidence of title.   He can prove any title which he possesses, but he can not escape from the rule of common source by showing a different claim of title under muniments which do not invest title in him.

5.   Appellees claim that the deeds from Brown to Hogue and Hogue to appellees were in legal effect mere releases, did not convey any specific interest, and were not such conveyances of the land as is contemplated in establishing the common source.   Citing Hendricks v. Huffmey, 90 Texas, 579, and Howard v. Masterson, 77 Texas, 41.   The principle announced in these cases, that the deed must convey some particular in-

terest in order to be a sufficient basis for the application of the rule of common source, we fully recognize. But we do not think that principle can be applied to appellees' benefit in this case. The deed from Brown to Hogue attempted to convey a one-half interest in the land, and the deed recites the source of his title to such interest. The deed from Hogue conveys his title to the particular land described, and is a special warranty deed to the land. These deeds attempt to convey the land and are not mere quitclaims, and in our opinion are sufficient to show common source. None of the reasons presented by appellees why the rule of common source should not obtain in this case are, in our judgment, sound; and we hold that the plaintiffs were entitled to its benefits upon the trial, unless the fact that their evidence extended beyond the point of common source to the question of identity of their ancestor with the person named in the patent as the grantee, should be held to defeat that right. As has been previously stated, some items of this evidence tended at least to create a doubt upon the point of identity, and we entertain no doubt that it was proper for the jury to consider it upon that issue, the defendants having also offered evidence of the same tendency. The plaintiffs had put the evidence in the case, unnecessarily it is true (Yarbrough v. Johnson, 12 Texas Civil Appeals, 95), and we think the rule of common source should not be held to destroy any force or effect which might properly attach to it. To have given the peremptory charge asked, the refusal of which is made the basis of the second assignment of error, would have had this effect, and the court properly refused to give the charge.

We further hold that the special charge refused, complained of in the third assignment of error, should not have been given, because it unqualifiedly put the burden of proof upon the defendants and required that they should show that the land "was not granted to plaintiffs' ancestor, and that the title of the party who was not the ancestor of plaintiffs, and to whom the land was patented, did not vest in the ancestor of the plaintiffs." This charge was subject to two objections. The jury might well have inferred from it that they were not at liberty to consider, upon the issue of identity, the evidence offered by the plaintiffs relating to that issue, and which tended to disprove the identity of their ancestor with the patentee. It was objectionable also, because it required not only disproof of such identity, but proof that plaintiffs' ancestor did not acquire the title of the true grantee. The evidence showing conclusively that if their ancestor had title he derived it directly from the State through the patent in question, proof of the first proposition, namely, that he was not the patentee, was also proof that title did not vest in him, but this proof would have defeated plaintiffs' recovery.

The condition of the evidence, however, did not justify the court in putting the burden as to the whole case upon the plaintiffs. The charge of the court had the effect to put the burden of establishing the identity upon the plaintiffs and cut them off entirely from all benefits from their proof of common source of title. The jury should have been told that

the plaintiffs had shown a common source of title as to the one-half the land claimed by M. J. Davis and J. E. Davis and were entitled to recover, unless they believed from the evidence that the Benjamin F. Adams to whom the patent issued was a different person from the Benjamin F. Adams who was shown to be plaintiffs' ancestor. Ordinarily, it would be proper to expressly place the unqualified burden of such proof upon the defendants, but we do not think this should have been done under the condition of the evidence in this case, heretofore explained.

Appellants further complain of the charge, as follows: "The court erred in his charge to the jury wherein they are instructed as follows: 'The jury is further charged that if they believe from the preponderance of the evidence that the plaintiffs are the children and heirs of B. F. Adams, deceased, and that said Benjamin F. Adams, deceased, is the same identical person who immigrated to Texas as a member of Captain Wiatt's company of volunteers, in December, 1835, and also the same person who was discharged from service by Captain Wiatt, and was also the same person who applied for and received the certificate from the board of land commissioners of Washington County, in February, 1838, and is the identical person named in the patent, then it would be the duty of the jury to find for plaintiffs for two-sevenths of the land.' Because this charge required plaintiffs to prove immaterial facts before they were entitled to recover."

This assignment is also well taken. It has the effect to place the burden on the said issue of identity upon the plaintiffs as to the entire case, and requires the jury to find detailed facts involved in that issue, some of which need not necessarily be true, as the basis of such identity.

The other assignments of error we deem it unnecessary to consider. For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

RAINEY, Associate Justice, did not sit in this case.

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.