## TEMPLE LUMBER CO. v. ARNOLD et al.
### (No. 1757.)

Court of Civil Appeals of Texas. Beaumont.
Feb. 12, 1929.

Rehearing Denied March 15, 1929.

R. E. Minton, of Lufkin, for appellant.
Jas. G. Barker, of Hemphill, and Jno. Hancock, of Fort Worth, for appellees.

HIGHTOWER, C. J. In this cause appellees recovered against appellant the title to the timber upon the land described in their petition and $325 as damages for a small quantity of the timber wrongfully cut and removed. We have no statement of facts, but the trial court filed the following conclusions of fact and law in support of its judgment:

"Findings of Fact.

"1. Plaintiffs conveyed to W. F. Goodrich by deed dated July 30, 1920, the timber in controversy. It also stipulated in said deed that the grantee should have six (6) years from the date thereof within which to cut and remove said timber. It was further stipulated in said deed:

"'The grantors herein hereby further give to the grantee his heirs and assigns, *the right and option* of extending such time for removal from year to year after the expiration of six years hereinabove given and granted

for cutting and removing said timber *by payment* of fifty cents (50¢) per acre for each year such extension is so desired, such right and option to be for a period of not exceeding four years from and after the date of the expiration of the six years time hereinabove given and granted for cutting and removing said timber from said land. *Payments for such extension as above provided, to be made on or before the 1st day of July, of each and every year such extension is so desired,* and payments may be made by the grantee, his heirs or assigns, by depositing the amount due for such extension for each year in the First National Bank of Hemphill, Texas, or the State Guaranty Bank of Hemphill, Texas, to the credit of Grantors, their heirs or assigns.'

"2. Goodrich conveyed said timber to defendant, Temple Lumber Company, long prior to the expiration of said six year period.

"3. Prior to the expiration of said six year period Temple Lumber Company did not cut and remove any portion of said timber.

"4. Prior to the expiration of said six year period Temple Lumber Company did not elect to exercise its option to extend the time for the cutting and removing of said timber, and did not give plaintiffs any notice of such election and did not on or prior to the expiration of said six year period pay to plaintiffs, or deposit to their account in the Bank mentioned, the 50 cents per acre for an extension of time.

"5. About thirty (30) days, or more, after the expiration of said six year period Temple Lumber Company informed Plaintiffs that it had failed to exercise its option and to make said payments, and asked plaintiffs if they would then accept said payment for said extension, which plaintiffs refused. Since then, and after the filing of this suit, Temple Lumber Company tendered to plaintiffs said 50¢ per acre for an extension of said time for said cutting and removing said timber, and said tender was by plaintiffs refused.

"6. During the month of December, 1926, Temple Lumber Company went upon the said land and cut and removed sixty five thousand (65000.) feet of timber and appropriated same to its own use and benefit.

"7. The stumpage value of said timber was $5.00 per one thousand feet.

"Conclusions of Law.

"I conclude, as a matter of law, as follows:

"1. The deed from plaintiffs to Goodrich conveying the timber in controversy, which afterwards passed to Temple Lumber Company, conveyed only such timber as was cut and removed within the said six year period, and that the stipulation for an extension of time for said cutting was an option in favor of Temple, and should be strictly construed against Temple Lumber Company; that when Temple Lumber Company failed to exercise said option by an election and payment as provided, it forfeited all of its right and title in and to said timber and same reverted to plaintiffs.

"2. That the cutting of the said 65000 feet of timber in December, 1926, by Temple Lumber Company was a trespass, and by reason thereof it became liable to plaintiffs for the value thereof in the sum of $5.00 per 1000 feet.

"3. Plaintiffs showed a common source of title as against defendant and is entitled to recover the timber sued for.

"Therefore, I conclude that all of the facts and the law are in favor of plaintiffs and that they should recover said timber and damages in the sum of Three Hundred Twenty five ($325.00) Dollars, together with the costs of this suit."

"Supplemental Findings of Fact.

"1. That on July 28, 1926, defendant's agent made inquiry of plaintiff, Clyde Fuller, to ascertain if they would then accept the rentals provided for in the deed and was advised that they would not accept them.

"2. That plaintiffs never made any demand of the defendant for the rentals, although it has at all times been ready, willing and able to pay them.

"3. * * *

"4. That defendant claimed the timber by deeds outside of and not connected with common source.

"5. * * *

"6. That the plaintiffs received $9666.00 in cash for the timber described in the deed to W. F. Goodrich.

"7. That Plaintiffs' deed conveying the timber to W. F. Goodrich contained, in addition to the clause quoted in the finding number 1, already made, a grant of ingress and egress to remove said timber, and the following clause:

" 'To have and to hold the above described timber, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said W. F. Goodrich, his heirs and assigns, for and during the period of time hereinabove given and granted for cutting and removing same from said lands.'

"8. That prior to the expiration of said six year period Temple Lumber Company did not cut and remove any portion of said timber other than a few trees that were blown down by storms.

"The above findings are from the undisputed evidence, but I regard them as being immaterial."

The conclusion that appellants were holding under appellees made appellees the common source of title, relieving them of the burden of deraigning title from and under the original grantees. Proof of common source establishes a prima facie case. Rice v. Ry.,

87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72; Ogden & Johnson v. Bosse, 86 Tex. 346, 24 S. W. 798. This proof raises the presumption that common source owns the title of all previous owners. McBride v. Loomis (Tex. Com. App.) 212 S. W. 480. However, this presumption is not absolute and conclusive, but is subject to rebuttal. Authorities above cited; Campbell v. McLoughlin (Tex. Civ. App.) 270 S. W 257. The issue is one of burden of proof (Howard v. Masterson, 77 Tex. 41, 13 S. W. 635), and when established shifts the burden to the defendant to show a superior title under the common source, or to show that he holds under a superior title not connected with the common source, or to show that the true title is outstanding, or to show prior possession under deeds not connected with the common source. The presumption that common source owned all titles relates to *title*, as distinguished from a mere claim. "Title" is thus defined by 38 C. J. 336: "In reference to property, that which constitutes a just cause of exclusive possession or which is the foundation of ownership of property."

This "just cause of exclusive possession" is the issue established by proof of common source. Proof that third parties were claiming the land under deeds and transferred this claim to defendant, and that defendant was asserting an independent claim thereunder, without showing prior possession under such a claim, is not proof of *title*, and does not rebut plaintiff's prima facie case under common source. If we are correct in what we have said—and we do not think the authorities can be otherwise construed—then appellant, by claiming under deeds outside of and not connected with the common source, did not make an issue against the common source title. We think proof of this claim without connecting it with the original grantee, or without showing prior possession thereunder, was merely proof of extraneous circumstances, with no legal effect. This conclusion is sustained by Foster v. Johnson, 89 Tex. 640, 36 S. W. 67. In that case defendant acquired deeds from third parties subsequent to the common source. It was said: "Johnson's [defendant's] evidence failed to connect him with the sovereignty of the soil, and for that reason failed to show that he had a superior title to that of Foster [plaintiff]." See, also, Smith v. Davis, 18 Tex. Civ. App. 563, 47 S. W. 101; Gordon v. Hall, 29 Tex. Civ. App. 230, 69 S. W., 219. It follows that the fact conclusion "that defendant claimed the timber by deeds outside of and not connected with the common source" would not destroy appellees' prima facie case, and that appellant's legal proposition: "It being shown that defendant claimed title under more than one source, and plaintiffs having shown common source with only one of them, they failed to make a prima facie title and judgment should have been for defendant"—based thereon, is not sound.

While not agreeing with appellant, we have been very much interested in its proposition and the review by its able counsel of the Texas authorities on the issue of common source. We have given most careful consideration to this argument and to the authorities cited, but believe that they are in harmony with and are not against the conclusions we have expressed above. We quote as follows from appellees' brief distinguishing appellant's authorities on their facts:

"Appellant is, in the main, relying upon the holding made in Story v. Bridwell (Tex. Civ. App.) 45 S. W. 847, by the Fort Worth Court, wherein it was said:

"'Where the evidence, by whomsoever introduced, shows that the defendant claims under two or more titles, any one of which does not spring from the same source as plaintiffs' title, it then devolves upon the plaintiffs to connect themselves with the state, or otherwise to show a superior title to that of defendant, from whatever source derived. Hendricks v. Huffmeyer, 90 Tex. 577, 40 S. W. 1; Starr v. Kennedy, 5 Tex. Civ. App. 502, 27 S. W. 26; Howard v. Masterson, 77 Tex. 41, 13 S. W. 635.'

"But when said language is considered in connection with the real holding in the case, it is pure obiter. The real holding made was that the deeds introduced failed to show just what portion of the title the defendant held and claimed under the common source. In other words, the deed was made jointly by the common source and a third party, and no showing was made as to the interest conveyed by the common source, and what interest was conveyed by the third party. This is clearly shown by the authorities cited in support of the holding made. None of them make the holding herein above quoted, but do make the holding as to the joint interest in the common grantor and the third party, as above stated.

"The court then added another reason why, in its opinion, the plaintiff had failed to make a case. It said:

"'And it makes no difference whether the title defendant claims under is good or not, if that title is not derived from the same source with that of plaintiffs, because possession with evidence of claim under any title not derived from the same source as the plaintiffs' is sufficient to require plaintiffs to prove a superior title.'

"It is indicated in the above holding that a deed from a third party coupled with possession would be sufficient at least to meet the presumption of title under the common source, and require plaintiff to show title from the sovereignty of the soil. * * *

"Appellant also cites and relies upon the cases of Howard v. Masterson, 77 Tex. 41, 13 S. W. 635, Hendricks v. Huffmeyer, 90 Tex.

577, 40 S. W. 1, Sweeten v. Taylor (Tex. Civ. App.) 184 S. W. 693, and other cases belonging to said line, in support of its proposition that the deed to it from a third party not connected with the common source is sufficient to overcome the presumption of title in the common source. These cases do not support the contention of appellant. Said decisions turn upon the rule that a joint deed by the common source and another to the plaintiff, standing alone, is insufficient to show the portion of the title held under the common source. This rule is made clear by our Supreme Court in Hendricks v. Huffmeyer, supra, wherein it is said:

" 'But it was also held, in Howard v. Masterson, 77 Tex. 41, 13 S. W. 635, that the plaintiff there did not show a sufficient claim of common source on the part of the defendant, by exhibiting a sheriff's deed, which purported to convey the interest of the plaintiff's grantor and of another defendant in the execution in the land in controversy. The principle decided was that a grantee in a deed which purports to convey the interest of two or more persons in the land, but which does not specify the particular interest of either, does not, by accepting the conveyance, admit a previous title to any specific interest in either the one or the other. At least in a voluntary conveyance by two grantors, the acceptance by the grantee is an admission that both had an interest, but, unless the specific interest intended to be conveyed is named or described, it is not such an assertion of title to any interest in either one of the parties as will enable the plaintiff to recover any definite interest, by showing, in connection with the deed, a superior right to the interest of that grantor whose title he claims to own. That principle applies to this case.'

"This rule is recognized in Gilmer v. Beauchamp, 40 Tex. Civ. App. 125, 87 S. W. 907, by the Galveston Court, wherein the facts were, the joint grantors owned the property equally, and it was, therefore, clearly shown what interest was acquired from the common source. The court said, 'The question is one of burden of proof only.' "

As appellees have established common source, the issue becomes one of superiority of title thereunder. This requires a construction of appellees' deed to Goodrich. Under the rule announced by Houston Oil Co. v. Boykin, 109 Tex. 276, 206 S. W. 815; Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817; Chapman v. Dearman, 111 Tex. 132, 229 S. W. 1112; Houston Oil Co. v. Bunn (Tex. Com. App.) 256 S. W. 259, a sale of timber as personalty, that is, where it appears from the deed that the timber is sold for removal or where a time limit is fixed, passes title only to so much of the timber as is cut and removed within a reasonable time, or within the time fixed by the deed. We think

the terms of appellees' deed to Goodrich bring it clearly within this rule, and that Goodrich was given no greater interest in the timber than the right to acquire title by cutting and removing it from the described premises. See, also, Texas Creosoting Co. v. Hartburg Lumber Co. (Tex. Civ. App.) 298 S. W. 645.

This deed gave Goodrich "the right and option of extending such time for removal." This right of extension was nothing more than an option to be exercised by him, whereby he might extend his rights in the timber as on the conditions of the original deed. Neither under the original deed nor under the extension period was Goodrich given title to the timber standing, but only the right to acquire title by cutting and removing it. Killough v. Lee, 2 Tex. Civ. App. 260, 21 S. W. 970; Davis v. Conn (Tex. Civ. App.) 161 S. W. 39; Humble Oil & Ref. Co. v. Davis (Tex. Com. App.) 296 S. W. 285.

Since appellant did not acquire title to the timber by cutting and removing it within the six years granted by the deed, the right to cut and remove was lost, unless duly extended under the option privilege. This right was purely optional with appellant. Appellees had no power to compel appellant to accept this option. Under these conditions, to acquire this additional time, appellant was required to comply strictly with the conditions of his option. It is said of such an option by 2 Williston on Contracts, 1334: "Time is of the essence in equity in a contract of option." Mr. Chief Justice Gaines, speaking for the Supreme Court in Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, said: "When the transaction is in the nature of a unilateral contract,—where a party is given an option to acquire a right by doing a certain thing within a specified time,—it is held that time is essential, and that in order to secure the right he must comply within the specified period. This is settled law." In Humble Oil & Refining Co. v. Davis, 296 S. W. 285, the Commission of Appeals thus defines the effect of an option to extend the time by payment of an independent consideration: "This clause was not a forfeiture provision. It was a limitation upon the term or period of the grant, and, upon the failure to drill or pay as aforesaid, the estate created by the lease ceased and reverted to the lessors." Killough v. Lee, supra, is most interestingly in point. That case involved the option to purchase a lot in the city of Galveston. The holder of the option within the time granted him gave notice that he would buy the lot, but within this time did not pay the purchase price. The court said: "The option which appellant had was to buy within six days. Therefore, whatever was requisite in order to buy was, by the express terms of the writing, required to be done within that time, and was therefore essential to invest appellant with the

right to a conveyance of the land. Consequently, unless it can be said that notice to the agent of his acceptance of the proposed trade constituted a purchase of the property by appellant, he must fail. In our opinion this conclusion is forbidden by the terms of the contract, which prescribe in what manner appellant may buy the land, viz., by the payment of $12,000 cash." Again quoting from Williston on Contracts, par. 894: "Where an option is given in a contract to one party or the other, he must give notice of the exercise of the option." It follows that appellant's rights in the timber ceased on expiration of the six-year period, unless it strictly complied with the terms of the option to extend. That is to say, on or before July 1st of the extension period appellant was required to pay or offer to pay the extension price.

What we have said denies appellant's propositions by which it would construe this deed, relieving it of divestiture of title, which propositions are as follows:

"(a) Mere failure to pay the rentals was no more than the breach of an independent covenant which did not go to the whole consideration of the contract, but was subordinate to its main purpose and did not constitute a breach of the entire contract or warrant its rescission by the injured party. Having received the main consideration, they were bound to perform their part and their remedy for breach of this part was a suit for breach and damages.

"(b) The 'right and option' of four years extension was a mere covenant annexed to an executed contract and there were no terms of forfeiture contained in it. Courts do not favor forfeitures and the terms of the contract will be strictly construed to avoid them.

"(c) A promise on the part of the grantee to do something in the future is usually construed as a covenant upon which the grantor may base a suit, but not a condition subsequent upon breach of which a right to defeat the conveyance may arise.

"(d) Payment of the rentals was not the essence of the contract.

"(e) Since the terms of the deed did not dispense with the necessity of demand by appellees, demand should have been made of Appellant at its place of business during office hours on the very last day of the term to save the forfeiture."

▇ The facts found by the court make appellant's rights depend upon the date of the Goodrich deed. If this date was July 30, 1920, as expressly found, we think the facts and circumstances recited by the court constituted a bona fide effort on appellant's part to comply with the option conditions, which were not defeated by appellees' refusal to accept the extension price. If the deed was dated July 30, 1920, then before the expiration of the six-year period, to wit, on the 28th day of July, appellant made a bona fide effort to pay the extension price. As appellees refused in positive terms to accept this tender, appellant was not required to do the foolish thing of making an actual tender of the consideration. His offer to pay, under the circumstances, fully complied with the conditions of the option. Again, by the terms of the deed, appellant was given until the 1st day of July of the extension period in which to make tender. Appellees had the right to make such a contract, and it must be enforced against them. If the deed was, in fact, dated the 30th day of July, 1920, the six years would not expire until the 30th day of July, 1926, and by their contract appellees had granted appellant until July 1, 1927, in which to pay the price of the extension.

Apart from the offer to pay on July 28, 1926, the circumstances of its dealing with the property subsequent to that date saved its rights under the option, provided the deed was dated July 30th.

Appellees do not agree with the construction we have given of the facts and circumstances in relation to the option, but if we are correct in our conclusion, they say the date of the deed as found by the court was erroneous; that in fact the deed was dated June 30, 1920, and in support of this contention, after submission of this case, appellees filed with us a certified copy of the Goodrich deed, supported by affidavits, showing its date to be June 30, 1920. Having no statement of facts and no assignment against the trial court's conclusions of fact, they recognize that we have no power to correct this alleged error, but ask us to reverse the case, if necessary, in order to avoid a miscarriage of justice. As an additional ground of relief, they say that a clear conflict exists between the date of the deed and the other determinative issues as found by the trial court. We think that this conflict exists. It was expressly found that appellant did not elect to exercise its option to extend the time for cutting and removing said timber, and did not give appellees any notice of such election, and did not on or prior to the expiration of said six-year period pay to appellees or deposit to their account in the bank mentioned the 50 cents per acre for an extension of time. It was further found that 30 days or more after the expiration of said six-year period appellant informed appellees that it had failed to exercise its option and to make said payments, and asked appellees if they would then accept said payments for said extension, which appellees refused. It was further found that appellant made this request on the 28th day of July, 1926. Now if the deed was dated July 30th, this request was made before the expiration of the six-year period; but if it was made 30 days after the expiration of the six-year period, then the deed could not have been dated on July 30th, but its date must have been 30 days prior

thereto. A conflict in the determinative issues as found by the trial court constitutes fundamental error necessitating a reversal, to the same effect as a conflict in the determinative issues as found by a jury's verdict. This contruction of the conclusions of fact necessitates a reversal and relieves us of the burden of determining the effect of the certified copy of the Goodrich deed and the affidavits attached thereto.

Reversed and remanded.

### On Motion for Rehearing.

Counsel for appellant, in his motion for rehearing, in this cause, earnestly insists that this court was in error in practically all of the questions that we decided, and again insists that we should reverse and render the judgment in this case in appellant's favor. We have given to the motion for rehearing very careful consideration in view of the earnestness of counsel's insistence, and the importance of the questions involved, but have again concluded that our original disposition of this appeal was correct and must, therefore, overrule appellant's motion for rehearing.

We find in the motion for rehearing this statement made by counsel for appellant: "The court should not have considered for any purpose the instrument filed by appellees on November 2, 1928, after the cause had been submitted on October 25, 1928."

The instrument referred to is the original deed to Goodrich mentioned in our original opinion in this case. While we did not state expressly in the original opinion that we had not considered this instrument for any purpose in making our disposition of this matter, we think that what we said in that connection clearly implied that we had not considered this instrument for any purpose in reaching our disposition of this appeal. But since counsel for appellant seems to be of the opinion that we did consider this Goodrich deed for some purpose, we desire to here now expressly state that we did not consider this instrument for any purpose whatever, and that it really has no place in this record.

Motion for rehearing overruled.