*Decision will be entered under Rule 50.*

FLORENCE A. FOSTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17414.    Promulgated January 15, 1930.

*T. E. Humphrey, Esq.,* and *Harold C. Anderson, C. P. A.,* for the petitioner.

*L. A. Luce, Esq.,* and *R. B. Cannon, Esq.,* for the respondent.

OPINION.

BLACK: The respondent confessed error in failing and refusing to allow deductions for taxes claimed by the taxpayer for years 1920 and 1921 in the respective amounts of $4,999.77 and $2,695.02. Said sums represented taxes actually paid by petitioner in said years over and above any amount of taxes refunded by the Lumber Co. under the terms of the contract. Therefore, respondent in computing deficiencies of petitioner for 1920 and 1921 should allow as deductions from gross income the sums just above stated.

The principal question for decision is whether the petitioner acquired the timber under the will of her husband subject to the terms of the contract, or whether she merely received rights under the contract to receive certain payments in the future. The Commissioner insists upon the latter view and submits that contract rights to receive $5 per thousand feet in 1920 and 1921 were worth approximately $3.50 per thousand in 1913, when acquired by petitioner, as the sums to be received in 1920 and 1921 should be discounted to arrive at their value in 1913. It is further contended that the difference between the discounted value and the amount received constitutes taxable income.

In the alternative the Commissioner contends that if the petitioner acquired timber rather than the contractual right to receive payments under the contract of sale, the value of said timber on October 31, 1913, was not in excess of $3.50 per thousand feet and that petitioner's profits would be the difference between this value of $3.50 per thousand feet and the $5 per thousand feet received for the timber.

In the case of *Burgess* v. *Seligman*, 107 U. S. 20, Mr. Justice Bradley stated the law thus:

Since the ordinary administration of the law is carried on by the State courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the State, and have all-the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of

State constitutions and statutes. Such established rules are always regarded by the Federal courts, no less than by the State courts themselves, as authoritative decisions of what the law is.

The contract here in question was executed in Texas, between Texas parties, it concerned Texas land and timber and was to be performed in that State. Manifestly the law of that State should govern its interpretation. The two leading cases seem to be *Carter v. Clark & Boice Lumber Co.*, 149 S. W. 278, and *Houston Oil Co. v. Boykin*, 109 Tex. 276; 206 S. W. 815, in which the rule is laid down that a timber contract, such as the one in the instant case, is only an executory contract of sale, whereby the title to the timber passed only when it was actually cut, removed from the soil and paid for.

In the instant case, the language of the contract is, " Said Foster, for the consideration hereinafter stated, hereby agrees to sell to the said Walker County Lumber Company, its successors and assigns and said Walker County Lumber Co. hereby agrees to buy from the said Foster upon the prices, terms and conditions hereinafter stated." The consideration and conditions thereinafter stated were that the vendee was to cut, remove, and pay for the timber when cut and removed. Any loss before cutting was that of the vendor. It appears to us that it was plainly the intention of the parties that title to the timber was to remain in the vendor and that the contract was an executory contract in the nature of an option.

In *Houston Oil Co. v. Boykin, supra*, the Supreme Court of Texas said, construing a similar contract:

The adjudged cases are generally in accord, and meet our full approval, in construing instruments like the above, which merely convey timber with a license to remove same, without stipulating the time within which it may or must be removed, as implying the removal of the timber within a reasonable time. 17 R. C. L. 1082; *Montgomery County Devel. Co. v. Miller-Vidor Lumber Company*, 139 S. W. 1020 (3).

The cases are in utmost conflict, however, in declaring the legal consequences of clauses in conveyances of growing timber, express or implied, for removal of the timber within a limited time, be it within a stipulated or reasonable term. * * *

Many cases, and perhaps the weight of modern authority, support the rule that timber deeds and contracts, containing time limits for the removal of the timber, pass no title whatever, save to so much of the timber as the vendee may remove within the time limited. (Citing authorities.) The reason for the rule last stated is well expressed in the opinion of Justice Levy in the case of *Carter v. Clark & Boice Lumber Company* (Tex. Civ. App.) 149 S. W. 278, in the following language:

"Having agreed to a limitation upon the right of removal, then the right of the purchaser to the timber is acquired by the act of removal and appropriation; and, as appropriation of the timber as such is dependent upon the removal from the soil, the intention of the parties would appear to be a contract of sale of such timber only as is removed within the time limited."

It is the plain duty of this court to interpret these contracts, like all others, in such manner as will best carry out the intentions of the parties. And we conclude that no rule will better accomplish that end than the one already approved by some of our Courts of Civil Appeals, under which title passes, under contracts like those set out herein, to only so much timber as may be removed within a reasonable time.

See also *Houston Oil Co.* v. *Bunn*, 209 S. W. 830; *Broocks* v. *Moss*, 212 S. W. 153; *Conn* v. *Houston Oil Co.*, 218 S. W. 137; *Martin* v. *Southern Pine Lumber Co.*, 284 S. W. 918; *Temple Lumber Co.* v. *Arnold*, 14 S. W. (2d) 926.

It is contended in behalf of the Commissioner that the rule of the Federal courts is to the contrary and *Milwaukee Land Co.* v. *Poe*, 31 Fed. (2d) 733, and *Norfolk Bank for Savings & Trust* v. *Whipple*, 258 Fed. 990, are cited in support thereof. But we do not so understand these cases. In the former, the court followed the courts of Washington and Idaho to the effect that a conveyance of standing timber was a conveyance of realty and required a deed to pass title, and in the latter the court followed the decisions of Virginia, North Carolina, and South Carolina and reached the same conclusion as the Texas courts. The following excerpt from *Wright-Young* v. *Camp Manufacturing Co.*, 110 Va. 678; 66 S. E. 843, was cited with approval:

Looking to the whole deed, and all of its provisions must be considered in order to arrive at its proper construction, we are of opinion that it was not the intention of the parties to give an absolute and unconditional title to the timber, but only such as was cut and removed within the time limited by the deed and such extensions thereof as the grantee was entitled to demand upon a fair construction of the deed, or as might be agreed upon between the parties.

We think it clear that under the law of Texas the petitioner became entitled to and acquired the timber under the will of her husband and not rights to receive certain payments in future under the logging contract, and that it is our duty to follow the Texas rule.

The fair market value of the timber in question at the time petitioner acquired it, October 31, 1913, was $3.50 per thousand feet and the price received for it in the taxable years was $5 per thousand feet.

In 1920, 17,000,000 feet of said timber covered by the original contract were sold and petitioner's one-half of the profits therefrom was $12,750.

In 1921, 12,588,133 feet of said timber were sold and petitioner's one-half of the profits therefrom was $9,441.09.

The measure of the gain in this case is the difference in the fair market value of the timber at the time it was acquired and the price for which it was sold. *Elizabeth J. Bray, Administratrix*, 4 B. T. A. 42; *Dorothy Payne Whitney Straight, Executrix*, 7 B. T. A. 177.

Relative to the timber known as the McMurrey or Montgomery timber, which was purchased on June 9, 1913, at a cost of $2,750 and

was sold in 1919 and 1920 for $3 per thousand, amounting to $6,187.27, the petitioner realized one-half of the profit thereof, and should be charged therewith.

A deduction is also claimed in the sum of $5,562.50 for the year 1921, being for one-half of the value of 2,225,000 feet of timber destroyed by storm on May 9, 1921, at $5 per thousand feet.

Losses of this character are governed by section 214 (a) (6) of the Revenue Act of 1921, as follows:

> Losses sustained during the taxable year of property not connected with the trade or business if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise.

The rule governing the measure of such losses is this: In the case of property acquired by gift, bequest, devise or descent, the basis for computing loss is the fair market price or value of the property at the date of acquisition, and not at the time of loss. *Pioneer Cooperage Co.*, 17 B. T. A. 119.

Petitioner's loss on her one-half of the 2,225,000 feet of lumber destroyed by the storm in 1921 was $3,893.75, based on a valuation of $3.50 per thousand feet at the time of acquisition and respondent should allow this as a deduction from gross income in computing petitioner's deficiency for said year 1921.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*