

# NUMBER 13-10-00439-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**EL PASO PRODUCTION OIL & GAS USA
L.P. N/K/A EL PASO E&P COMPANY, L.P.,**                     Appellant,

**v.**

**KENNETH SELLERS,**                                            Appellee.

---

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

This appeal involves a title dispute over a mineral estate in Hidalgo County, Texas. By seven issues, which we re-number as two,[1] appellant El Paso Production

---

[1] *See* TEX. R. APP. P. 47.1.

Oil & Gas USA, L.P. (hereinafter "El Paso") appeals the trial court's granting of appellee Kenneth Sellers's partial motion for summary judgment in the dispute, on the grounds that: (1) the trial court's judgment is a final and appealable judgment; (2) the trial court erred in granting Sellers's motion for partial summary judgment and its subsequent orders. We reverse and remand.

## I. BACKGROUND

In 2006, Sellers initiated an action against El Paso and claimed that he was the vested record title owner of an undivided three-fourths (3/4) of oil, gas, and other minerals of Lots Nos. 12 and 9 of the Porcion[2] No. 74, M. Martinez Survey, Abstract No. 582, Hidalgo County, Texas. In his petition, Sellers demanded From El Paso a proper accounting and payment of oil and gas proceeds realized from December 2, 2002 to the present time.[3] Sellers also requested that the trial court find that he is the vested record title owner of the disputed mineral estate. El Paso answered with a general denial and included a plea in abatement alleging that not all necessary parties were involved.

## A. Sellers's Motion for Partial Summary Judgment

Sellers filed a motion for partial summary judgment three years after the initial petition. In his motion, Sellers alleged that he was the vested record title owner of an aggregate 29.5 mineral acres[4] in the Deatrick Gas Unit in Hidalgo County, Texas.

---

[2] We note the unique spelling of "portion" as "porcion" in the land records.

[3] According to Sellers, El Paso predecessor Coastal Oil & Gas USA, L.P. entered into an oil and gas lease with Sellers as lessor over Lots 7, 9, 12, and 21, in which a 1/6th royalty was reserved from all proceeds realized from the sale of oil and gas production.

[4] Sellers stated that 24.5 mineral acres out of forty surface acres were from Lot 12 and five mineral acres out of ten surface acres were from Lot 9.

2

Sellers traced his superior title of the disputed mineral acreage by laying out the following chain of title:

(A) 1909 Warranty Deed from grantor Eloisa Vela Dougherty to grantee, Everett L. Stratton covering 2,088 acres of land out of Porciones No. 74 and 75, Hidalgo County, Texas. This deed was duly recorded in Hidalgo County.

(B) 1931 Trustee's Deed from W.E. Allen, trustee as grantor, to W.C. Austin, Grantee, covering Lots 7, 9, 12, 19, 20, 21, 23, 24, 39 from Porcion 74; and Lots 6 and 7 from Porcion 75. This conveyance totaled approximately 430 acres. The deed was the result of a default on repayment of promissory note by Everett L. Stratton in favor of W.E. Allen, trustee, for the benefit of W.C. Austin. This deed was duly recorded in Hidalgo County.

(C) 1948 Quitclaim Deed from E.L. Stratton, grantor, to W.C. Austin, grantee, covering Lots 7, 9, 12, 19, 20, 21, 23, 24, and 39 from Porcion 74; and Lots 6 and 7 from Porcion 75. This deed was duly recorded in Hidalgo County.

(D) March 1950 Warranty Deed from W.C. Austin, grantor, to Henry Wehrmann, grantee, covering the east ten acres of Block No. 12 of the Stratton Tract Subdivision. This deed was duly recorded in Hidalgo County.

(E) May 1950 Warranty Deed from W.C. Austin, grantor, to Henry Wehrmann, grantee, covering ten acres of land out of Block No. 12 in Porcion 74, adjacent to the 10 acres of Block No. 12 described in the deed dated March 1950. This deed was duly recorded in Hidalgo County.

(F) September 1950 Warranty Deed from W.C. Austin, grantor, to Henry Wehrmann, grantee, covering the west-half of Block No. 12 in Porcion 74, covering approximately 20 acres. This deed was duly recorded in Hidalgo County.

(G) April 1969 Warranty Deed No. 1 from H. Wehrmann and wife, Sue Wehrmann, grantors, to Guadalupe Garza Zamora, grantee, covering the east twenty-two acres of Lot 12 and all of Lot 9 of Porcion 74, being approximately thirty-two acres of land and an undivided 3/4ths of the oil, gas, and other minerals in the thirty-two acres of land. This deed was duly recorded in Hidalgo County.

(H) April 1969 Warranty Deed No. 2 from Henry and Sue Wehrmann, grantors, to Sellers, grantee, covering the west eighteen acres of Lot 12 of Porcion 74, including an undivided 3/4ths of the oil, gas, and other minerals in and under that tract. This deed was duly recorded in Hidalgo County.

(I) May 1969 Quitclaim Deed from Guadalupe Garza Zamora and Amparo S. de Garza, husband and wife grantors, to Sellers, grantee, covering an undivided

3

one-half interest in the oil, gas, and other minerals in and under the east twenty-two acres of Lot 12 and all of Lot 9 of Porcion 74, being an aggregate 16 mineral fee acres in the total thirty-two acres of land. This deed was duly recorded in Hidalgo County.

By virtue of this chain of title from a common source, Sellers claims entitlement to an undivided 29.5/503.47th of the Deatrick Gas Unit.

## B. El Paso's Motion for Summary Judgment

In its own motion for summary judgment, El Paso alleged that title examinations defeat Sellers's establishment of title to Lots 9 and 12 because other parties hold competing titles to the estates in question.

### 1. Lot 12

El Paso asserted that 12.1 acres in Lot 12 was in dispute, and the remainder was not. According to El Paso, a separate tract of land known as the "El Pato" tract overlies the 12.1-acre portion claimed by Sellers. According to El Paso's motion, the El Pato tract properly belonged to Martin D. Cavazos by virtue of several successive conveyances and a portion of that tract overlaid the disputed 12.1 acres of Lot 12, thus making Sellers's claim to that mineral estate invalid. El Paso introduced a correspondence packet with an attached land survey from Sellers's attorney recognizing that Sellers's interest was in the lands lying east of the El Pato tract.

### 2. Lot 9

With regard to Lot 9, El Paso first argued that a break in the chain of title took place in the September 1950 deed from Austin to Wehrman because the deed did not include any language which conveyed any interest in Lot 9. Second, El Paso asserted that a separate Warranty Deed preceded the 1931 Trustee's deed, evidenced by a 1909 recorded conveyance from Everett L. Stratton to William Spillett of land described by

4

metes and bounds containing ten acres of land, more or less. El Paso contended that this 1909 conveyance involved the lands described in Lot 9. Third, a recorded 1920 Sheriff's Deed under an order of sale for delinquent taxes was issued following a suit titled "State of Texas v. Wm. Spillet [sic], which conveyed to Equitable Trust Company, two tracts of land. One tract was described as Lot 9 of the Stratton Tract, containing twelve acres. Fourth, El Paso presented evidence of a recorded 1942 Sheriff's Deed from Wm. Spillet [sic] to Tabasco Consolidated Independent School District of the "north [ten] acres . . . also known as Lot 9 in Porcion 74." El Paso stated in its motion that these multiple breaks in Sellers's alleged chain of title defeats his claim to the mineral interest in question.

## C.    Trial Court's Order

On May 11, 2010, the trial court ruled in Sellers's favor. The trial court concluded that Sellers proved an aggregate 29.5 mineral acre interest in Lots 9 and 12 of the Stratton Tract Subdivision, in Porcion 74 of Hidalgo County. The trial court further recognized that El Paso succeeded as lessee from the Coastal Oil & Gas 2000 lease, which included Sellers's mineral estate. Accordingly, the trial court ordered the 2000 lease terminated as a result of El Paso's refusal to pay Sellers royalties. Further, the trial court ordered El Paso to account for Sellers's 29.5/503.47th of all proceeds that it realized from sales of gas produced from the unit since the date of Sellers's suit, February 24, 2006, until the present time with prejudgment interest.

This appeal ensued.

5

## II.    FINALITY OF JUDGMENT

As a preliminary procedural issue, El Paso asserts that the trial court's order is final, ripe for appeal, and confers jurisdiction upon this court to address the merits of its appeal.   We agree.   Generally, a "judgment that actually disposes of all parties and all claims is final, regardless of its language."   *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005).   However, a judgment that does not dispose of all claims cannot be final unless its words "'unequivocally express' an 'intent to finally dispose of the case.'"   *Id.* (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001)).

Here, the trial court's judgment indicates the order and judgment's finality and that all remedies alleged by the parties and not granted were denied.   We conclude that this language unequivocally expresses the trial court's intent to dispose of the case and make it final.   *See In re Burlington*, 167 S.W.3d at 830; *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996) ("When both parties move for summary judgment, the non-prevailing party may appeal both the prevailing party's motion as well as its own"). If the trial court's intent to finally dispose of the case is clear from the order, the order is final and appealable even if the record does not afford a legal basis for the adjudication; such a "judgment is final—erroneous, but final."   *Lehmann*, 39 S.W.3d at 200, 204. But such errors are waived if not presented by proper assignment of error in the appellate court. See *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655-56 (Tex. 2001) (per curiam).

Therefore, we sustain El Paso's first issue and address the remaining issue.

### III.    SUMMARY JUDGMENT RULING AND ORDERS

In its second issue, El Paso contends that the trial court erred by granting Sellers's motion for partial summary judgment and issuing the subsequent orders.

### A.    Standard of Review

We review a trial court's granting of summary judgment de novo. *Mid-Century Ins. Co. of Texas v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When both parties moved for summary judgment and the trial court granted one and denied the other, we determine all questions presented and render the judgment the trial court should have rendered. *Id.* (quoting *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002)).

In a traditional motion for summary judgment, the movant bears the initial burden to show the trial court that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law on the issues set out in the motion. *See* TEX. R. CIV. P. 166a. We review the evidence presented and "take as true all evidence favorable to the nonmovant, and make all reasonable inferences in the nonmovant's favor." *KPMG Peat Marwick v. Harrison County Fin. Co.*, 988 S.W.2d 746, 748 (Tex. 1999).

### B.    Analysis

In his motion, Sellers alleged that he is entitled to the relief sought because he established as a matter of law that he was the record title owner of the mineral estates of Lots 9 and 12 of Porcion 74. A party asserting title to real property must recover upon the strength of its own title by successfully proving: (1) regular chain from the sovereign; (2) superior title from a common source; (3) adverse possession; or (4) prior possession coupled with proof that possession has not been abandoned. *See Land v.*

*Turner*, 377 S.W.2d 181, 188 (Tex. 1961); *United Sav. Ass'n. of Tex. v. Villanueva*, 878 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1994, no pet.); *see also Temple Lumber Co. v. Arnold*, 14 S.W.2d 926, 927–28 (Tex. App.—Beaumont 1929, writ dism'd w.o.j.) (elaborating on the burdens and procedures of proving superior title from a common source). Sellers contends that he holds superior title from a common source, Eloisa V. Dougherty, and introduced evidence in his motion for summary judgment of recorded deeds that purportedly form a chain of title on both lots from Doughterty to the present.

However, El Paso filed its own motion for summary judgment, replied to Sellers's response to its motion for summary judgment, and introduced contradicting evidence on both lots. With regard to Lot 12, El Paso introduced two correspondence packets from one of Sellers's attorneys addressed to El Paso's counsel.[5] Both pieces of correspondence appear to cite and recognize a survey which indicates approximately 12.23 acres claimed by Sellers as part of Lot 12 overlay the eastern part of the El Pato tract.

With regard to Lot 9, El Paso offered evidence which purports to break Sellers's chain of title from Dougherty. The first is an affidavit by one of El Paso's licensed landmen who interpreted a purported 1909 deed from Everett L. Stratton to William Spillett as a ten-acre tract of land purported to be Lot 9.[6] El Paso also offered two

---

[5] Sellers objected to the trial court and reasserts the objection on appeal that the correspondence dated May 2, 2006 and October 12, 2006 are inadmissible under rule of evidence 408. *See* TEX. R. EVID. 408. We disagree. Our review of the referenced letters does not indicate a (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount." *Id.* The letters appear to be clarifications of Sellers's claims rather than offers of settlement or compromise. Accordingly, the objection is overruled.

[6] We acknowledge that the instrument relied on by El Paso to defeat Sellers's claim of title to Lot 9 is handwritten and difficult to decipher.

distinct sheriffs deeds from 1920 and 1942 which also allegedly break the titles. Finally, El Paso notes in its motion that a reading of the September 1950 deed relied on by Sellers from W.C. Austin to Henry Wehrmann only included Lot 12 and not Lot 9.

Based on the record, we conclude that neither side conclusively proved nor conclusively negated as a matter of law that Sellers held superior title from a common source as to the disputed mineral acreage. *Tex. Worker's Comp. Com'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *see Land*, 377 S.W.2d at 188; *United Sav. Ass'n. of Tex.*, 878 S.W.2d at 622; *Temple Lumber Co.*, 14 S.W.2d at 927–28. Questions remain unanswered by the fact finder. Accordingly, we conclude that the trial court erred in its ruling. El Paso's second issue is sustained.

## IV. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

 

 

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
26th day of July, 2012.

9